[No. 2075]

IN THE MATTER OF THE APPLICATION OF J. C. SWALL
AND ELLEN E. SWALL (HIS WIFE) FOR A WRIT OF
HABEAS CORPUS ON BEHALF OF ALBERT EDMOND
SWALL (A MINOR), AGAINST ANDREW F. SWALL
AND MARGARET A. SWALL (HIS WIFE).

1. HABEAS CORPUS—SCOPE OF REMEDY—CUSTODY OF CHILDREN.
    A writ of *habeas corpus* for the custody of a minor child
    held by persons other than his parents will not be denied
    because it is not held by actual force but remains with the
    respondents because of natural inclination.

2. HABEAS CORPUS—CUSTODY OF MINORS—CONTRACTS.
    An oral agreement whereby the father of a minor child
    surrendered its custody to a third person is not void as against
    public policy, but will be enforced for the benefit of the minor.

3. HABEAS CORPUS—CUSTODY OF INFANT—CONTRACTS.
    An oral agreement entered into by the father of a minor in
    California, giving its custody to a third person, is valid and
    binding on the mother, where the parents had separated by
    agreement; the custody of the minor having been given to the
    father.

4. HABEAS CORPUS—CUSTODY OF CHILD—EVIDENCE—SUFFICIENCY.
    In *habeas corpus* for the custody of a minor child held under
    an agreement by respondents, who were not his parents, with
    his father, evidence *held* to show that it is for the benefit of the
    minor to enforce the agreement.

ORIGINAL PROCEEDING in *habeas corpus*. Application
by J. C. Swall and Ellen E. Swall for writ of *habeas corpus*
on behalf of Albert Edmond Swall against Andrew F.
Swall and Margaret A. Swall. **Writ denied.**

The facts sufficiently appear in the opinion.

*Lunsford & Fowler*, for Petitioners.

*Dixon & Miller*, for Respondents.

By the Court, NORCROSS, J.:

This is an original proceeding in *habeas corpus*.

The petitioners for the writ, J. C. Swall and Ellen E.
Swall, are the natural parents of the said Albert Edmond
Swall, a minor, born November 16, 1897. The petition
charges that the said minor is unlawfully detained, held,
kept, and restrained by Andrew F. Swall and Margaret

A. Swall at their home, known as the "Swall ranch,"
situate about eight miles from the city of Reno.  The
petition for the writ set up the fact that prior to the
application to this court a similar application had been
made to the Second judicial court, Hon. T. F. Moran,
Judge, and, after hearing upon return of the writ, the
proceedings were dismissed.  The return to the writ in
this case raises the question of the authority of this ·
court to take cognizance of the questions presented
otherwise than on appeal from the order of the lower
court entered on the proceedings therein.  The return
also sets forth the following allegations of fact: "That
Albert Edmond Swall, otherwise known as Albert Swall,
is not now, nor was at the time of issuing the annexed
writ, in the custody or possession of or confined, held, or
kept or restrained of his liberty by said respondents.
That your respondents have not, nor has any one by their
authority, exercised any physical restraint over the said
Albert Edmond Swall before or since the issuance of said
writ; and said respondents further say that they know
of no obstacle or impediment to prevent the said Albert
Edmond Swall from being present before this honorable
court at the time and place fixed in the said writ; but, in
order to comply with the order of your honorable court,
these respondents have requested, and now request, the
said Albert Edmond Swall to appear, and they have no
doubt he will voluntarily appear at the time and place
fixed in said writ.  That about thirteen or fourteen years
ago the said Ellen L. Swall, one of the petitioners for said
writ, deserted her husband (the said J. C. Swall) and at
the same time deserted her child (the said Albert Edmond
Swall), then about 2 years of age; that after said deser-
tion the said Albert Edmond Swall remained in the care
and custody of his said father for a period of two or three
years and during such period, owing to the dissolute
habits of the said J. C. Swall, was not properly cared for,
and at the end of said time was taken care of by a sister
of the said J. C. Swall, to wit, Louisa Tomlinson, for about
one year.  That, while the said Albert Edmond Swall was

so in the care and custody of the said Louisa Tomlinson, the said respondents made a visit to the said Louisa Tomlinson, in Sonoma County, State of California, and saw the said Albert Edmond Swall and took a great liking for him. That the said Albert Edmond Swall, then some 5 or 6 years of age, returned the affections bestowed upon him by said respondents, whereupon the said respondents asked the said J. C. Swall and the said Louisa Tomlinson for the boy, whereupon the said J. C. Swall, with the consent of the said Louisa Tomlinson, gave the said Albert Edmond Swall to said respondents to be by them taken and treated as their own son and adopted as such, so that he might become an heir by inheritance of such respondents. That thereupon said respondents took the said Albert Edmond Swall with them to their home and he has ever since lived with said respondents and has been educated and treated by them in every respect and loved by them as their own son. That the said Albert Edmond Swall has never at any time been restrained of his liberty or detained against his will, but he has at all times voluntarily remained and lived with said respondents, has looked upon them as his parents, and has at all times desired and now desires to remain with them and be adopted formally as their son. That respondents have at all times had and now have great affection for the said Albert Swall, and said affection has been fully returned by him, and it would cause him great distress if he were forcibly or otherwise taken from the care, companionship, and relationship of son to the respondents. That no children have resulted from the marriage of said respondents and they have recently filed a petition in the Second judicial district court of the State of Nevada to be allowed to adopt the said Albert Edmond Swall as their son, and the said Albert Edmond Swall has become a party to said petition and consented to and requested that the prayer of said petition may be allowed, and that he be adopted as the son of the said Andrew F. Swall and Margaret A. Swall. That recently the said Andrew F. Swall filed

another petition in said Second judicial district court of the State of Nevada, in and for the county of Washoe, to be appointed guardian of said Albert Edmond Swall, and the said Albert Edmond Swall has in said proceedings made and filed a nomination of guardian, a copy whereof is hereunto annexed marked Exhibit B, wherein and whereby he nominated the said Andrew F. Swall as the guardian of his person. That the said respondents are the owners of property worth between $15,000 and $20,000, over and above all debts owed by them, and they desire that the said Albert Edmond Swall, otherwise known as Albert Swall, should become heir to the said property. Said respondents have been informed and believe, and therefore aver, that said J. C. Swall and Ellen E. Swall are possessed of very little property and depend for their living almost entirely upon the daily labor of the said J. C. Swall and Ellen Swall and two other children who are assisting in their support."

1. If the contention of counsel for petitioners is correct, that they are entitled to the custody of their minor child by virtue of the mere fact that they are his natural parents and are not shown otherwise to be improper persons to be intrusted with the custody of such minor, petitioners should prevail unless there is something in the contention of respondents that they are not holding said minor under any physical restraint. In this, as in probably most cases where a minor is abiding with persons who as to him are in *loco parentis*, no physical restraint is necessary, for the natural inclination of the child does away with any necessity of force. But where, as in this case, a right to the possession of the minor is claimed, the right to retain such possession by such force as may be necessary may be assumed and that, if necessary, it would be exercised. Proceedings in *habeas corpus* have so frequently been resorted to to determine the right to the possession of a minor that the question of physical restraint need be given little or no consideration where a lawful right is asserted to retain possession of the child.

**2.** Respondents assert a legal right to the possession of the minor, Albert Edmond Swall, by virtue of an oral agreement made by the minor's father, one of the petitioners, at a time when such minor was but 5 or 6 years old, and at a time when the petitioners were living separate and apart from each other and such minor was in the actual custody and control of his father, but residing with an aunt, a sister of the father, which agreement was to the effect that said minor be given to respondents to be by them taken and treated as their own son and heir, which agreement has been acted upon for nearly ten years. There are cases holding that agreements of this kind are void as against public policy and that they will not be enforced against the claim of the natural parents or either of them. The weight of modern authority, however, seems to recognize such agreements as enforceable where it appears to the advantage of the minor to enforce the same. This latter view seems to us to be supported by the better reason. It recognizes the superior rights of natural parents, all other matters being equal, but places the interest of the child as the first consideration, and, where it appears that the interest of the child will manifestly be advanced by enforcing such agreement, the same will not be disturbed. (*Stanford* v. *Gray*, 129 Pac. 423; *Matter of McDowle*, 8 Johns. 328; *Curtis* v. *Curtis*, 5 Gray, 537; *Dumain* v. *Gwynne*, 10 Allen, 270; *Legate* v. *Legate*, 87 Tex. 248, 28 S. W. 281; *Miller* v. *Miller*, 123 Iowa, 165, 98 N. W. 631; *Hohenadel* v. *Steele*, 237 Ill. 229, 86 N. E. 719; *Carpenter* v. *Carpenter*, 119 Mich. 167, 77 N. W. 703; *Anderson* v. *Young*, 54 S. C. 388, 32 S. E. 448, 44 L. R. A. 277; *Fletcher* v. *Hickman*, 50 W. Va. 244, 40 S. E. 371, 55 L. R. A. 896, 88 Am. St. Rep. 862; *Lamar* v. *Harris*, 117 Ga. 993, 44 S. E. 866; *Clark* v. *Bayer*, 32 Ohio St. 299, 30 Am. Rep. 593.) See, also, 29 Cyc. 1591-1601.

In the very recent case of *Stanford* v. *Gray*, *supra*, the court said: "There are some authorities which hold that a contract made by a parent in which he surrenders the

care, control, and custody of his minor child to another is void as against public policy. The great weight of authority, however, sustains the position of appellants that a parent may by contract legally transfer and surrender his infant child into the custody of another where the interest of the child is not prejudiced by the transaction; and, in all controversies arising respecting the custody of the child after such transfer and surrender have been made, the paramount consideration (the question of controlling importance) is the interest, welfare, and happiness of the child. In other words, while contracts of this kind, fairly and voluntarily entered into, are valid as between the parties, they will not be enforced to the detriment of the child."

In *Legate* v. *Legate, supra,* the court said: "The right of the parent or the state to surround the child with proper influence is of a governmental nature, while the right of the child to be surrounded by such influences as will best promote its physical, mental, and moral development is an inherent right, of which, *when once acquired,* it cannot be lawfully deprived. Ordinarily the law presumes that the best interest of the child will be subserved by allowing it to remain in the custody of the parents, no matter how poor and humble they may be, though wealth and worldly advancement may be offered in the home of another. Where, however, a parent, by writing or otherwise, has voluntarily transferred and delivered his minor child into the custody and under the control of another, as in the case at bar, and then seeks to recover possession of the child by writ of *habeas corpus,* such parent is invoking the exercise of the equitable discretion of the court to disrupt private domestic relations which he has voluntarily brought about, and the court will not grant the relief, unless upon a hearing of all the facts it is of the opinion that the best interests of the child would be promoted thereby. It is sometimes said that such a voluntary transfer is 'void' or that it is 'contrary to public policy'; but the cases using such language show that it is not used in an absolute sense, but in the sense

that such transfer is no impediment to the action of the court in determining what is best for the interest of the child. The law does not prohibit such a transfer, but on the contrary allows the child to reap the benefit thereof when it is to its interest so to do."

Upon the hearing upon the return of the writ, testimony, subject to objection, was heard upon the part of petitioners and respondents. The petitioner J. C. Swall, father of the minor, was not present at the hearing, and there was no attempt to dispute the agreement as testified to by the respondents, Andrew F. Swall and his wife, Margaret A. Swall, by the terms of which agreement the child in question was given to them·by the father to be kept and raised as their own son, and that this agreement has been carried out by respondents in letter and spirit for nearly ten years.

It is contended by counsel for petitioner that, as the agreement in question was made in California, the law of that state controls, and it is claimed that the decisions of the courts of that state sustain the contention of petitioners. Counsel cites the cases of *Ex Parte Clark*, 87 Cal. 638, 25 Pac. 967, *Johnson's Estate*, 98 Cal. 531, 33 Pac. 460, 21 L. R. A. 380, and *Ex Parte Hart* (Cal. App.) 130 Pac. 704, in support of this view. In none of the cases cited does it appear that the precise question involved in this case was presented. Questions involved in those cases grew out of proceedings in guardianship or adoption which are controlled by statute. We think it would be unreasonable to assume, from anything which appears in the cases cited, that the court of last resort of California would refuse to enforce a contract such as is involved in this case where it clearly appeared to be to the best interest of the minor to enforce it.

In *Re Campbell*, 130 Cal. 380, 62 Pac. 613, the court said: "The father's right is, however, coupled with the obligation to support and educate the child (Civ. Code, 196), and is also qualified and strictly limited by the fact that the child itself is a human being, and as such vested with rights for which it is entitled to protection. Hence

it is the clear right and duty of the state, to the extent the protection of the child may require, to control and limit, and under certain circumstances to terminate, the right of the father. Accordingly, independently of numerous statutory enactments, courts of equity have always, by the appointment of guardians and otherwise, exercised a liberal jurisdiction over the persons and estates of minors; and this jurisdiction may be said to be limited only by the principle on which it rests, namely, the necessity of protecting the rights of the child. But the question here does not relate to the general right of the state, as exercised by the English court of chancery or courts of equity in this country, but to the special powers conferred by the codes on the superior court for the appointment of guardians. These do not purport to confer upon the superior court, acting in the special proceeding, all the powers hitherto exercised by courts of equity, but only the power to appoint guardians in certain cases (Code Civ. Proc. 1747) and under certain conditions (Code Civ. Proc. 1751); and the case is therefore to be determined by these provisions. By the former section the power of the court to appoint guardians is limited to the case of 'minors who have no guardian legally appointed by the will or deed'; and the same limitation is prescribed by section 243 of the civil code and section 241 therein cited. In the latter section the power of the parent to dispose of the custody of the child by will or deed is expressly recognized; and this must be taken as a recognition of the general right of the parent to dispose of the custody of the child, of which it is but a special example. For it would be unreasonable to suppose that the legislature intended to limit or restrict a right, universally recognized in our own and all systems of law, to the single case provided for, which must therefore be regarded simply as an application of the recognized principle."

In *Stanford* v. *Gray, supra,* the Supreme Court of Utah said: "There being no evidence to the contrary, it will be presumed that the law of the State of California relating

to the forfeiture of the custody of minor children is the same as the law of this state. * * * The portion of the decision referred to (130 Cal. 380; 62 Pac. 613) no doubt was put in evidence for the purpose of showing the 'state of the law in California' on the question here in controversy, as construed by the supreme court of that state, and the decision seems to recognize the validity of contracts of the character of the one under consideration."

Section 197 of the civil code of California provides: "The father of a legitimate, unmarried, minor child is entitled to its custody, services and earnings; but he cannot transfer such custody or services to any other person, except the mother, without her written consent, unless she has deserted him, or is living separate from him by agreement."

The proof in this case shows that some time in the year 1900 the petitioners separated and lived separate and apart from each other until the year 1909, when they again resumed marital relations. At the time of the separation two of their four children were taken by the mother and have since remained with her. The minor in question in this case was left with the father, who subsequently placed him in the care of a married sister, where he remained until he was taken by respondents. The other child at some time, which does not appear from the evidence, was placed with another married sister of the father, where she still remains.

**3.** While there is no direct evidence that petitioners were living separate from each other by agreement, we are warranted, we think, in arriving at that conclusion from the evidentiary circumstances in the case. The case of *Ex Parte Hart, supra,* supports the view that a relinquishment of the right of custody of a minor by the father at a time when the mother was living separate from him by agreement would be binding on both. So that, if we concede that the law of California controls, it is our judgment that the father's agreement is binding unless it be shown that it would be to the best interests of the minor not to enforce such agreement.

**4.** After petitioners resumed marital relations in 1909, no effort was made to gain possession of the minor child until June of this year. It may be conceded from the showing that petitioners are now able to care for the child in controversy. It does not appear, however, that the minor's welfare will be promoted if the agreement as to custody is not enforced. The allegations in the return to the writ are in the main supported by the evidence introduced. The respondents are the uncle and aunt of the minor. For the past nine years, in pursuance of the agreement, they have cared for and given him the advantages of schooling the same as if he were their own son. They have regarded him as a son and he has regarded them as the only parents he ever knew. Respondents have no children of their own and are desirous of making him heir to their estate. The minor himself has expressed a strong preference to remain with respondents, and he has arrived at that age when his preference should be given consideration. The undisputed facts of this case, we think, amply warrant the enforcement of the agreement for the best welfare of the minor.

Nothing in this decision should be taken as affecting the jurisdiction or discretion of the district court in determining the proceedings in guardianship or adoption mentioned in the return to the writ, but those proceedings should be determined as the facts therein presented and the law warrant.

This proceeding is dismissed.