(118 So. 575)

## PAYNE v. PAYNE. (6 Div. 35.)

Supreme Court of Alabama. Nov. 8, 1928.

Hugh A. Locke, of Birmingham, for appellant.

Altman & Koenig, of Birmingham, for appellee.

GARDNER, J. Petition for the custody of a child by A. J. Payne against Ola Payne. The appeal is from a decree denying relief and dismissing the petition.

Petitioner is the paternal grandfather of A. J. Payne, Jr., a boy five years of age, the child of Ola Payne (appellee here) and Ray Payne, now deceased. The parents of the boy were divorced on May 13, 1926, the father remarrying. They lived in Birmingham, within two blocks of the child's grandparents. It appears well established by the proof that the child was, and had been for more than a year, in the custody of its grandparents, when on June 30, 1927, respondent took the child without their knowledge or consent and carried it to her home. The suit by the grandfather followed. Testimony offered by petitioner tended to show that in fact the boy had been at his home and cared for by himself and wife a great portion of the time since he was 15 months of age, and that the mother had been more or less neglectful of its welfare. There was, however, evidence to the contrary.

Both of the grandparents (now reached middle age) and the mother bear good reputations. Petitioner is in comfortable financial

circumstances, owning property of the value of $35,000 and a gross income of about $500 per month, with no one living in the home dependent upon his support other than his wife. That these grandparents are fond of the boy, and anxious to raise him and give him a college education, clearly appears, and is not questioned.

The mother has a home near by, worth $7,500, incumbered for $1,500, which incumbrance her brother testifies he will himself assume. She has about $650, and no other property. She estimates her monthly income as about $130, consisting of room rent, sewing and hairdressing which she does at home, and help from her brother. Her father and brother state their willingness and ability to help her.

On February 12, 1927, the father of the child, who was a member of the police force of Birmingham, was killed. His insurance was about $7,500, which we understand from the proof, under his will, became the property of his second wife, and the latter gave to the child $1,500 of this amount. The child also receives from the city $10 per month.

That the prima facie right to the custody of the child is always in the parents, over all other persons, is well-nigh universally recognized. Striplin v. Ware, 36 Ala. 87; Ex parte Rickerson, 203 Ala. 305, 82 So. 769; Montgomery v. Hughes, 4 Ala. App. 245, 58 So. 113; Brown v. Brown, 2 Ala. App. 461, 56 So. 589; Neville v. Reed, 134 Ala. 317, 32 So. 659, 92 Am. St. Rep. 35.

It is equally well established that this prima facie right of the parent is not an absolute right, but that the question of prime importance is the welfare of the child, which becomes the ward of the court. Children's Aid Soc. v. Davis, 211 Ala. 344, 100 So. 325; Lynn v. Lynn, 217 Ala. 190, 115 So. 184; McDaniel v. Youngblood, 201 Ala. 260, 77 So. 674; Murphree v. Hanson, 197 Ala. 246, 72 So. 437; Stringfellow v. Somerville, 95 Va. 701, 29 S. E. 685, 40 L. R. A. 623.

Nor is the question of comparison of financial ability a matter of controlling influence, though, of course, to be given some consideration in connection with the ability of the parties to properly care for the child. Children's Aid Soc. v. Davis, supra; Murphree v. Hanson, supra. Nor can the parents bind a court of equity by any agreement as to the disposition of the custody of their child, and, indeed, the question of such custody cannot, under our decisions, become a matter res adjudicata. Sparkman v. Sparkman, 217 Ala. 41, 114 So. 580; Ex parte Shuptrine, 204 Ala. 111, 85 So. 594; Murphree v. Hanson, supra.

The parent may, however, forfeit his prima facie right to the custody of the child by his conduct, and the relinquishment of such custody to another and continued acquiescence therein are matters to be considered by the court in determining the question

of prime importance—the welfare of the child. Children's Aid Soc. v. Davis, supra; Neville v. Reed, supra; Brown v. Brown, supra; Montgomery v. Hughes, supra; Stringfellow v. Somerville, supra.

We are of the opinion the learned chancellor confined the inquiry in the trial of this cause within too narrow a scope, expressing his conclusion that the result must turn upon the sole question of the fitness of the mother to have the custody of the child. This is of course a most material inquiry, but the welfare of the child being of paramount importance, all questions relating thereto should be duly considered. As previously noted, respondent and her husband Ray Payne were divorced on May 13, 1926, but the decree was silent as to the custody of the child. Petitioner offered to show that at the time of this divorce decree it was agreed between the parties thereto that respondent here be given the house in lieu of alimony, and that this petitioner be given the custody of the child, and that, in compliance with that agreement, an additional contract was entered into to the effect that petitioner, A. J. Payne, the grandfather, should adopt the child, and that he did so adopt it, and that thereafter the child was given over to said A. J. Payne, who, with his wife, has had the care, custody, and control thereof until it was taken from their home by respondent on June 30, 1927.

Petitioner offered this proof in connection with other evidence tending to show respondent acquiesced for more than a year in such consummated agreement and paid little attention to the child during that time and until it came in possession of funds and a monthly income. Petitioner also offered to show that he had taken out insurance upon his life naming the child as beneficiary. All of these were matters proper to be considered as bearing upon the attitude of the parties toward the child and their interest in, and solicitude for, its welfare, as well as their good faith and as expressive of their views as to the good of the child.

In Stringfellow v. Somerville, supra, the Supreme Court of Virginia, speaking to a somewhat analogous situation, said:

"Where a parent has transferred to another the custody of his infant child by fair agreement, which has been acted upon by such other person to the manifest interest and welfare of the child, the parent will not be permitted to reclaim the custody of the child, unless he can show that a change of the custody will materially promote his child's welfare. Green v. Campbell, 35 W. Va. 699 [14 S. E. 212, 29 Am. St. Rep. 843]."

We do not quote the foregoing as meeting our approval in all respects, but sustaining the view that we entertain to the effect that such agreement and acquiescence on the part of the parent is to be carefully considered and not to be entirely ignored merely upon the whim or caprice of the parent.

It appears, therefore, that by the court's ruling relevant and material evidence was excluded, and, therefore, not before the court and here for consideration. It becomes necessary to reverse the cause, and remand the same to the trial court for a reconsideration upon full proof as herein indicated.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.