THE PEOPLE OF THE STATE OF NEW YORK ex rel. MAY A. WALTERS, Relator, *v.* WILLIAM F. DAVIES and Another, Respondents.

Supreme Court, Fulton County, May 19, 1932.

F. *Law Comstcck*, for the relator.

*Maider & Maider*, for the respondents.

HEFFERNAN, J.  The relator seeks by this proceeding to have the custody of her son Robert awarded to her.  For that purpose she obtained a writ of habeas corpus returnable at the Montgomery Special Term on July 24, 1931.  The respondents made a return admitting the material allegations of the petition but asserting that the relator is not in a position to properly care for the child.  Thereupon the matter was referred to the county judge of Fulton county, who is also the Children's Court judge, to take the testimony of the parties and to make a report with his opinion.  The report is now before the court and in his opinion the referee recommends that the child be returned to his mother.  The facts are practically admitted and the sole question to be determined is what disposition should be made for the best interests of the child.

Proceedings of this character, fraught with such serious consequences as they are, of necessity are distressing and troublesome.  This child was born on April 15, 1926, in a hospital in the city of Gloversville.  At that time the parents were seriously ill.  Apparently both were suffering from pneumonia and influenza.  The child's mother was then unconscious, and she remained in the hospital many weeks.  The father never regained his health and died on August 20, 1927.  The respondents are husband and wife and, although they have been married for about fifteen years, have no children of their own.  Mabel Davies, one of the respondents, was a sister of the child's father.  On May 17, 1926, the respondents assumed the care and maintenance of the infant at the father's request.  At that time it is conceded that the child's condition was such that he required constant care and attention.  For the first year of his life he was constantly under the care of a physician.  Mrs. Davies at the doctor's direction bathed him in olive oil daily for a period of more than a year.  The relator has two older children, a boy and a girl.  For years after the birth of the child in question she was unable because of illness to maintain or care for him.  With the exception of small contributions of clothing during the first three years of his life she has been unable to assist him financially.  Respondents have borne that burden.  The mother made no effort to obtain his custody until some time in the year 1928 when she made an objection because the child was baptized in the Lutheran church of which Mr. and Mrs. Davies are members.  The relator is a Baptist.  She does not believe in infant baptism

until the child reaches the age of eleven or twelve years. It appears that this incident greatly provoked the relator because she felt that the baptism of the child at such an early age was hurtful. All the parties to this controversy are of the Protestant faith. Fundamentally there is very little difference in the Baptist and Lutheran creeds.

It is conceded by the relator and found by the referee that the respondents have given this child excellent care and that but for the attention that Mrs. Davies gave him in the first year of his life it is doubtful if he would have survived. It is undisputed that they are able financially to support and maintain him and to provide higher education if that is desirable. It is also conceded that they have treated him as their own child and that he in turn treated them as his parents.

The child's mother weighs less than one hundred pounds. The proof shows that the two children of which she has the custody are underfed and underweight. I agree with the referee, however, that at the present time she is financially able to provide for all of her children. She has suffered a great deal because of adversity and, as the referee has so well expressed it, a less courageous and resourceful woman would have failed in the undertaking. Her character and that of Mr. and Mrs. Davies are beyond reproach. It is undoubtedly true that the respondents are in a position to give this youngster more material advantages than the mother is in a position to do. Their financial situation is somewhat better. That alone, however, should not influence the court.

I cannot agree with the conclusion of the referee, however, that this child should be returned to his mother. Apparently he was influenced in reaching this determination solely because she is the mother. Counsel for both parties have called my attention to authorities which they urge are controlling. In a situation such as this legal precedent is of little avail. Each case, of necessity, must be a law unto itself. It cannot be doubted that the Supreme Court, as the guardian of all infants under its extraordinary equity powers, may in a proper case award the custody of an infant to one not legally entitled thereto. The welfare of the child has always been recognized as the paramount consideration. The child is not a chattel. The parent has no proprietary right to his custody as such. Instances are not uncommon where the court has interfered even with the control of a parent. The claims of parents are always subordinate to the welfare of children. My duty, and my only duty, is to look to the child's welfare and to decide accordingly. In making that determination I must make answer to my own conscience. This child is now six years of age. He has been

separated from his mother since his birth. He has been nurtured and sustained by the respondents without assistance from the parents. They have grown to love him and in return he reciprocates that affection. He knows no other father or mother. In his opinion the referee has referred to an incident not detailed in the stenographic record to the effect that during the hearings this child manifested neither affection nor interest in his sister and brother. Apparently the mother engaged him in conversation and inquired if he did not desire to come to her house and visit her and the other children. An emphatic negative was the reply. In connection with this incident the referee reports that at the same time he exhibited " a demeanor that left no doubt in my mind as to his attitude towards his mother and brother and sister." This occurrence has satisfied me that this child is wanting in affection for those of his own blood. He is now of an age when he realizes that. To him they are practically strangers. To them he is likewise a stranger. Who can doubt that in the years of separation there is an estrangement even between him and his mother which time cannot overcome: To force this child into his mother's home in my judgment will result in discord and disunion. We are dealing here with an intensely human problem. Irrespective of what her motive may be in seeking to obtain the custody of the boy I am convinced that this mother can never feel for him the same love and affection that she has for the two children who have been the objects of her care and ministrations since their birth. On his part the boy will never forget the respondents. In that way discord would come into the home.

It is with some reluctance that I disapprove of the recommendation of the referee. I have devoted a great deal of time to the testimony and to his report. On the occasions that they have appeared before me I have observed these parties and the child and I am satisfied that his custody should be awarded to the respondents. The mother, however, should have the right of visitation at all reasonable times and she should have his custody at least one full day in every week, the day to be selected by her, but at a time that will not interfere with his education. The respondents as a matter of honor, decency and humanity should inculcate in the mind of this boy respect, love and veneration for his mother and affection for his brother and sister.

The respondents are required to pay the expenses of the reference. If the parties cannot agree as to the amounts I shall fix it on notice.

The order to be entered hereon should contain a provision that relator's application is denied without prejudice to a renewal if the circumstances of the parties should change.