166 So. 801

### BLEVINS et al. v. UNDERWOOD et al.

### 6 Div. 871.

Supreme Court of Alabama.

Feb. 26, 1936.

Rehearing Denied April 9, 1936.

L. D. Gray, of Jasper, for appellants.

Pennington & Tweedy, of Jasper, for appellees.

GARDNER, Justice.

These proceedings involve the custody of a child, a girl four years of age. Complainants are the parents and defendant Madge Underwood its paternal aunt.

The cause was tried before the chancellor on oral proof, and he awarded the custody of the child to the defendants, who have had its care and custody from the time when it was only a few weeks old.

Undisputedly the child has a good home with the Underwoods, who are shown to be most excellent people, and who are childless. The evidence sustains the conclusion that their constant care and attention, aided by medical experts, have served to save the baby's life, and as illustrative of their devoted care is the estimated expenditure of $1,000 on the child's health, with no thought of reimbursement, though they are not people of means, but earning a very comfortable livelihood. The child's mother was not in good health, and it was delivered to Mrs. Underwood while the mother was in the hospital. Since that time the Underwoods have twice returned it to the parents, who live in the same county, and after short periods the child was again returned to them; and there is much to support the conclusion that the last time Mrs. Underwood told the parents (the child then about a year of age) that, if they intended to keep the child, to do so then, as they were becoming much attached to it. While there was no definite agreement, yet the fact remains that the Underwoods, with the consent of the parents, have had practically the entire care and control of the child for four years. They make excuse because of the effect upon Mrs. Underwood's health, but the chancellor might well conclude it was insufficient.

As to the father, there is proof justifying the conclusion that he has never been greatly attached to the child. And, in addition, he has led such a dissipated life that his wife procured a divorce from him, though they shortly remarried; he insisting that he has since reformed and is now living better. His earnings are meager, and would appear insufficient to comfortably support his wife and six year old boy that constitute his present family.

In cases of this character, there are, as said in Children's Aid Society v. Davis, 211 Ala. 344, 100 So. 325, 326, "no sure grounds of decision, and so much of human interest is involved that the making of a decree is a matter of extreme delicacy, and of no inconsiderable embarrassment and responsibility."

The prima facie right is in the parents, yet it is not an absolute right; the question of prime importance being the welfare of the child. "The parent may, however, forfeit his prima facie right to the custody of the child by his conduct, and the relinquishment of such custody to another and continued acquiescence therein are matters to be considered by the court in determining the question of prime importance—the welfare of the child." McGrady v. Brown, 230 Ala. 484, 161 So. 475, 476; Payne v. Payne, 218 Ala. 330, 118 So. 575; Children's Aid Society v. Davis, supra; Bradley v. Bennett, 168 Ala. 240, 53 So. 262; Findley v. Jones, 214 Ala. 325, 107 So. 840.

Nor is the question of comparison of financial ability a matter of controlling influence, though of course to be given some consideration in connection with the ability of the parties to properly care for the child. Payne v. Payne, supra.

It appears from the record that the chancellor had in mind some division of time between complainants and defendants as to the custody of the child. But, before the conclusion of the hearing, the parents, contrary to the court's order, obtained possession of the child by trickery, and declined to divulge its secret hiding place. The father served imprisonment in jail as a punishment for this contempt, and the chancellor concluded that, at least for the present, such division of time was not proper by reason of distrust of the parents to conform to the court's decree. The decree is left open for any further order the chancellor may deem proper for the welfare of the child, and, indeed, the question of the control of a child, a ward of the court, never becomes a matter res adjudicata.

The record indicates the trial of this cause by the chancellor with much care and patience and with a due sense of responsibility resting upon him. He could closely observe the contending principals in the case as well as the numerous witnesses examined. All of this gave him an advantage which, as observed in Children's Aid Society v. Davis, supra, "must be of peculiar value in a case like this."

Upon due consideration, we are unwilling to here disturb his finding.

102

The insistence of appellees that the appeal should be dismissed is rested upon McEntire v. McEntire, 213 Ala. 328, 104 So. 804, in connection with the contempt of the trial court as above indicated. The conduct constituting the contempt there treated was pending the appeal. In the instant case it was pending the trial in the court below with no indication of any such conduct pending this appeal. The chancellor, recognizing that the welfare of the child was the question of paramount importance, proceeded to a conclusion of the hearing, notwithstanding the conduct of the parents. For that contempt the father has been punished, and there appears no just reason for a refusal here to properly consider the appeal ·on its merits. Ex parte Vaughn, 205 Ala. 296, 87 So. 792. This insistence is therefore without merit.

We are of the opinion, however, the decree should be affirmed, and it is accordingly so ordered.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.