HAYNES, Respondent, *v.* FILLNER, Appellant.

(No. 7,739.)

(Submitted December 28, 1937. Decided January 11, 1938.)

[75 Pac. (2d) 802.]

*Mr. Stanley E. Felt,* for Appellant, submitted an original, a reply and a supplemental brief, and argued the cause orally.

*Mr. Daniel L. O'Hern,* and *Messrs. Brown & Jones,* for Respondent, submitted an original and a supplemental brief; *Mr. Robert N. Jones* argued the cause orally.

64

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff brought this action in October, 1935, to obtain a decree awarding to her the custody and control of Marion Fill-

ner, a minor daughter of defendant, then of the age of seven years.

In general, the complaint alleged that defendant had placed the child in the custody of plaintiff in July, 1932, pursuant to an agreement that plaintiff should have the exclusive control and custody of the child, the mother of the child being then deceased; that pursuant to the agreement plaintiff had ever since then clothed, fed, maintained and educated the child in her home, and that the best interests of the child would be subserved by permitting her to remain in the custody of plaintiff. Defendant, by answer, put in issue most of the material allegations of the complaint, and likewise asked the court to assume jurisdiction over the person of Marion Fillner as a court of equity and award the custody to him. The trial took place in December, 1936, resulting in a decree awarding the custody to plaintiff, with the right of visitation in defendant at reasonable times.

Defendant has appealed from the judgment. The gist of his contention is that neither the complaint nor the evidence, viewed in the light most favorable to plaintiff, warrants the judgment appealed from. Specifically he contends that the complaint does not make out a cause for awarding the custody of the child to plaintiff, and that the evidence falls short in the same respects as does the complaint. No contention is made that the evidence goes beyond the allegations of the complaint; hence we shall but consider the sufficiency of the evidence to support the judgment. The sufficiency of the evidence automatically determines the sufficiency of the complaint, for the attack upon each is based upon the same ground.

The court made the following findings of fact:

"I. That the wife of the defendant, George W. Fillner, died on or about the 15th day of January, 1929, leaving the defendant and two children, Russell, age about three years, and Marion, age about eleven months, surviving her; that shortly thereafter the defendant arranged with a sister of the deceased wife at Mandan, North Dakota, to care for said children, and that said sister did care for them until on or about the 9th day of Decem-

ber, 1930, at which time both children were brought to Forsyth, Montana, and turned over to the plaintiff under an agreement that the plaintiff was to care for them for a trial period at the compensation of $50 per month, and later the plaintiff and defendant were to make other arrangements if advisable. The court further finds that the defendant was dissatisfied with the care given to the children by the sister at Mandan, and the relations between the sister and the defendant were discordant at the time he took the children from her and brought them to Forsyth, Montana.

"II. That in early May, 1931, the defendant took the boy Russell with him to Wisconsin, and later to Mississippi, where he had established relations with another relative, a brother-in-law; that in July, 1931, the defendant returned from Mississippi to Forsyth, Montana, and informed the plaintiff that he wanted to take Marion with him to join Russell and himself in Mississippi, and asked her opinion in relation to taking Marion; that the plaintiff, while having become much attached to Marion and though reluctant to break the attachment, informed the defendant that if the two children could be together with him in a home, she did not wish to obstruct that end, and told him to take Marion; that the defendant thereupon did take Marion to Mississippi, and thereafter, in the spring of 1932, the husband of the plaintiff, F. F. Haynes, wrote to the defendant at Waynesboro, Mississippi, and informed him that the plaintiff was going to Des Moines, Iowa, on a visit and asked about arranging a visit with Marion; that as a result of correspondence between the parties, the defendant wrote said F. F. Haynes that there had been difficulty between the defendant and the brother-in-law, a Mr. Speegs, and his wife, and that Marion could return to Montana, and advised said Haynes in said letter, 'I guess Marion is with you to stay'; and the defendant in the same letter requested Mr. Haynes to try and find a suitable home for the boy Russell; that in a telephone conversation with the plaintiff at Des Moines, Iowa, shortly thereafter, the defendant told Mrs. Haynes, the plaintiff herein, that he was turning Marion over to her for keeps; that shortly thereafter

the plaintiff went to Springfield, Illinois, and got Marion, and at that time it was definitely understood between plaintiff and defendant that the plaintiff would not again take Marion on a temporary basis, but would take her permanently to rear and educate without expense of any nature to the defendant; that such was the agreement and understanding and became, by the conduct of the parties, an executed oral agreement amply substantiated by the evidence, the terms of which were that the plaintiff received the child Marion from the defendant with the definite understanding and agreement that the plaintiff would take the sole custody and control of the child and that the defendant would relinquish same to her; that under the terms of said agreement, the plaintiff returned the child to her home at Forsyth, Montana, and ever since said time has cared for said child in a fitting and proper manner without any expense whatsoever to the defendant; that after taking said child at Springfield, Illinois, by the plaintiff in July, 1932, and up to the present time, the defendant at no time ever offered in any way to contribute to the support of Marion or at any time ever manifested any attitude other than in support of the said agreement, until about the month of October, 1935, at which time the defendant visited the office of F. F. Haynes and informed him that he had just discovered that Marion had been registered in the school as 'Marion Haynes,' and demanded that said Haynes sign a paper that Marion was only temporarily in the custody of Mrs. Haynes, the plaintiff herein; that from January until May, 1935, the defendant was out of employment in his capacity as a railroad fireman, and during this period of time lived at the Haynes home, and that while there, the school card of Marion was officially made out in the name of 'Marion Haynes,' and that the boy, who had been living in the Haynes home since June of 1934 continuously up to October, 1935, was registered as 'Russell Fillner'; that the defendant had full knowledge at all of those times of the fact that Marion was registered as 'Marion Haynes,' and made no objection or protest of any nature at any time until the visit to the office of said Haynes; that the court further finds that the said child is now registered

in the schools as 'Marion Fillner,' and that it is agreeable to the plaintiff that she retain said name.

"III. That the defendant returned his boy Russell to Montana in the latter part of June, 1933, and brought him to the Haynes home where he lived with his sister until September, 1933, at which time a brother of the defendant from Casper, Wyoming, came and took said boy to Casper to live and to go to school; that said boy did live with them at Casper until June, 1934, at which time the said brother of the defendant informed him that he could not keep the boy longer; that the defendant was then working in the state of Washington as a farm hand and he informed the Haynes family that he would have to get another place for the boy Russell to stay; that the Haynes then informed the defendant in Washington that they would take care of the boy and have him live with him [them?] at Forsyth, and they did receive said boy at Billings, Montana, and continued to care for said boy continuously from June, 1934, to October, 1935, and clothed and cared for said boy and educated him; that the father and defendant returned from the state of Washington in the summer of 1934, and stayed at the Haynes home for about two months and a half in the fall of said year; and stayed continuously at the Haynes home from about January 1st, 1935, to June, 1935, when he went to Flathead Lake in Montana, where he worked for said Haynes on a cabin; that the work and labor and cash payments made by the defendant substantially paid for the board and room of the defendant himself and for that of his son during the times they lived in the plaintiff's home. The court expressly finds, however, that the defendant at no time contributed to the support of Marion Fillner in any manner whatsoever after he had delivered said child under the agreement at Springfield, Illinois, to the plaintiff, up to the time of this trial, and never offered in any way to do so, and that the defendant by his conduct at all times since the delivery of said child to the plaintiff at Springfield, has ratified and approved and recognized the agreement entered into with the plaintiff herein.

"IV. That the defendant is a single man and does not maintain a home, but rooms and boards, although the court finds that the defendant owns a home which he rents at Forsyth, Montana; that the defendant proposes, in the event the child is turned over to him, to send her to Casper, Wyoming, to the home of the brother hereinbefore referred to as one caring for the brother of the child Marion, until such time as he, the defendant, may establish a home of his own at Forsyth, Montana; that in such event the defendant proposes to bring a girl, a half-sister of Marion and Russell, and who is about twenty-two years of age, to Montana from Illinois where she has been qualifying as a beauty operator, and set up housekeeping in Forsyth, Montana, and thus maintain a home, although there is no corroborative testimony disclosing the willingness or consent on the part of the half-sister as to this arrangement. The court does find, however, that the defendant is a man of reasonable income as a railroad fireman, and during the past year he has been more or less continuously employed, and that he is in a position to maintain such a home as he proposes, but the court further finds from all the evidence that the defendant is not now situated so that he is a proper person to receive the care and custody of the child Marion, and that her general welfare and happiness demands that she remain in the home of the plaintiff.

"V. That the plaintiff is a resident of Forsyth, Montana, and she has lived at that place with her husband for many years; that she maintains a suitable and proper home, and has been at all times and is now a fit and proper person to have the care, custody and control of the child Marion, who will be nine years of age on the 6th day of February, 1937; that her husband, F. F. Haynes, has been for many years and is now the county attorney of Rosebud county, Montana; that the plaintiff is a graduate nurse, and that both she and her husband treat the said child Marion in all respects as their own child; that the plaintiff and her husband have no children of their own, and they are financially able to support and maintain Marion, and are willing to care for and educate her, and in all respects to

carry out the agreement hereinbefore mentioned whereby the said child was transferred to them by its natural parent.''

The evidence on many of the issues of fact was conflicting. There is substantial evidence to sustain all of the material findings of fact made by the court, and we cannot say that the evidence preponderates against those findings. Under the well-established rule in an equity case, such as this, we must, therefore, accept the facts as found by the trial judge, and will not disturb the decision of the trial court except upon a clear showing of an abuse of judicial discretion. (*Ex parte Bourquin,* 88 Mont. 118, 290 Pac. 250.)

It is generally held that a court of equity has inherent jurisdiction, to be invoked by petition, to award the custody of minor children, and that such jurisdiction is not taken away by a statute conferring like power on another court. (46 C. J. 1249, 1250; *In re Starr* (*Brock* v. *Josephine*), 245 App. Div. 5, 280 N. Y. Supp. 753; *Kartman* v. *Kartman,* 163 Md. 19, 161 Atl. 269; *Vonderbilt* v. *Carew,* 242 App. Div. 482, 275 N. Y. Supp. 795; *Urbach* v. *Urbach,* (Wyo.) 73 Pac. (2d) 953.)

In awarding the custody of a child, the paramount consideration is the best interests of the child in respect to its temporal and its mental and moral welfare. (Sec. 5878, Rev. Codes.) Presumptively, the best interests of the child require that its custody be awarded to the parent (sec. 5834, Id.), but this is a rebuttable presumption. Each case must be decided upon its own peculiar facts and circumstances. It is well settled that where a natural parent has voluntarily relinquished his child to another and there has grown up a reciprocal affection between the foster parent and the child, the court may refuse to disturb those relations at the request of the parent if the best interests of the child so require. (46 C. J. 1248, and cases there cited.)

The courts are not in accord as to whether an agreement between a parent and another to surrender the custody of a child of the former to the latter is valid. We need not here determine whether such an agreement is valid in this state. The legislature, however, has made this declaration on the subject:

"It shall be lawful for the parents, parent or guardian or other person having the right to dispose of [a] dependent or neglected child to enter into an agreement with any association or institution incorporated under any public or private law of this state, for the purpose of aiding, caring for, or placing in homes such children, and being approved as herein provided, for the surrender of such child to such association or institution, to be taken and cared for by such association or institution, or put into a family home." (Sec. 12292, Rev. Codes.) Whether such an agreement is valid or not, it is proper to be considered in determining what is for the best interests of the child, and whether the parent has waived his right to its custody or is estopped from asserting it. (46 C. J. 1248.) As was said by the supreme court of Alabama, in *Campbell* v. *Sowell,* 230 Ala. 109, 159 So. 813, 814: "However, as pointed out in the case of *Payne* v. *Payne,* 218 Ala. 330, 118 So. 575, such an agreement and acquiescence on the part of the father is to be carefully considered, and not to be entirely ignored, upon the whim and caprice of the parent. It is at least a circumstance to be considered, in the light of the evidence in the case, but in no event can it determine the action of the court or stand in the way of another disposition of the child should its welfare require a change. In view of the fact that the agreement made by appellant with appellee and with the juvenile court was brought into the case, we have felt that some reference should be made thereto as to its binding force and evidential qualities.

"It has been uniformly held in this jurisdiction that the prima facie right to the custody of the child is always in the parents, over all other persons, and this holding is almost universally recognized. (*Striplin* v. *Ware,* 36 Ala. 87; *Ex parte Rickerson,* 203 Ala. 305, 82 So. 769; *Montgomery* v. *Hughes,* 4 Ala. App. 245, 58 So. 113; *Neville* v. *Reed,* 134 Ala. 317, 32 So. 659, 92 Am. St. Rep. 35; *Payne* v. *Payne,* supra.) On the other hand, it is equally as firmly established that the prima facie right of the parent is not absolute, but that the question of first and paramount importance is the welfare, present and future of the child. It is generally recognized that, when a

proceeding is instituted to determine the custody of the child, such child becomes at once a ward of the court."

The supreme court of Nevada, in *Ex parte Swall*, 36 Nev. 171, 134 Pac. 96, 97, Ann. Cas. 1915B, 1015, said: "The weight of modern authority, however, seems to recognize such agreements as enforceable where it appears to the advantage of the minor to enforce the same."

In *Legate* v. *Legate*, 87 Tex. 248, 28 S. W. 281, 282, the court said: "Where, however, a parent, by writing or otherwise, has voluntarily transferred and delivered his minor child into the custody and under the control of another, as in the case at bar, and then seeks to recover possession of the child by writ of habeas corpus, such parent is invoking the exercise of the equitable discretion of the court to disrupt private domestic relations which he has voluntarily brought about, and the court will not grant the relief unless, upon a hearing of all the facts, it is of opinion that the best interests of the child would be promoted thereby. It is sometimes said that such a voluntary transfer is 'void,' or that it is 'contrary to public policy'; but the cases using such language show that it is not used in an absolute sense, but in the sense that such transfer is no impediment to the action of the court in determining what is best for the interest of the child. The law does not prohibit such a transfer, but, on the contrary, allows the child to reap the benefit thereof when it is to its interest so to do."

In *Langenegger* v. *Purl*, (Tex. Civ. App.) 57 S. W. (2d) 915, 916, the court said: "Where a natural parent has willingly surrendered his own child as a helpless infant into the care, keeping, and custody of foster parents, and such parties, in all respects qualified and competent to do so, have reared it for six years, and domestic and affectionate relationships have grown up between such child and its foster parents, which it would be injurious to the child to destroy, the district court in the exercise of its equity jurisdiction is authorized to make such award as the best interests of the child demand, even when such award denies the custody to the natural parent. And the fact that one of the foster parents dies does not change such rule.

The general presumption of law does obtain that the child's best interests will be subserved by awarding it to the natural parent, but this is a rebuttable presumption, and the ultimate issue in such case is what is best for the welfare of the child. That was a fact issue to be determined within the sound discretion of the trial court upon the evidence before him. And, when so determined, unless that discretion be abused, or unless contrary to the great preponderance of the evidence, the appellate court is not authorized to set aside his judgment.''

The supreme court of Idaho, in *Andrino* v. *Yates,* 12 Idaho, 618, 87 Pac. 787, 789, in speaking of the right of the court to award the custody of a minor to one other than the parent, said: ''On the other hand the conduct of the mother furnishes reason for supposing that she had surrendered the care and custody of the child to the defendant for more than eight years, during most of the conscious lifetime of the child, with the understanding that she would not reclaim it. She made no offer to contribute to its support. By her own acts of omission she has permitted, allowed, and encouraged the child to fix her affections on her aunt and cousins, among whom it has resided since its infancy, and it is clear to us that the condition of things cannot now be changed without endangering the happiness and welfare of the child. The welfare of the child is the main consideration for the court under the facts of this case, and nothing that would throw any light upon the matter should be overlooked by the court.''

In *Hummel* v. *Parrish,* 43 Utah, 373, 134 Pac. 898, 901, the court said: ''The decisions rendered in this class of cases almost universally hold that where, as here, a parent has surrendered the control of his child when it was a toddling infant to other parties, and permitted them to maintain, clothe, feed, and care for it until it is eight or nine years of age, and a strong reciprocal mutual affection has grown up between the child and its foster parents, as in the case at bar, and the parent seeks to recover possession of the child, the natural or presumptive right of the parent cannot prevail if the interests and welfare of the child forbid it. The law in such cases regards the welfare and

permanent interests of the child much more important than the natural or presumptive right of the parent. In other words, the paramount consideration in such cases is the well-being of the child. If it appears to the court that the physical, intellectual, social, moral, and educational training and general welfare and happiness of the child will be best promoted by leaving it with the foster parents, the presumptive right of the natural parent must yield to the interests of the child.''

Mr. Schouler, in his work on Domestic Relations, sixth edition, section 748, states the general rule thus: ''American courts hold fast, nevertheless, to the true interests and welfare of the child. * * * Thus, * * * there are circumstances, where parental rights have been waived by the voluntary establishment of new relations permissively, under which the court will, from similar regard for the child's welfare, refuse to disturb a custody voluntarily yielded, in favor of the parent who has long acquiesced in the transfer; thus regarding the ties both of nature and association. * * * Where the mother dies, and the father tells the great-grandparent that he might take and keep his infant child as long as he and his wife lived, or until the child reaches the age of twenty-one, and the latter does take the child and care for it and keep it until it reaches the age of three years before the father has asserted any claim to it, the father has lost his right of custody. The contract was sufficiently definite to be enforced. The contract cannot be said to be unilateral and without consideration.''

To the same general effect are *Clark* v. *Bayer,* 32 Ohio St. 299, 30 Am. Rep. 593; *Harrison* v. *Harker,* 44 Utah, 541, 142 Pac. 716; *In re Fields,* 56 Wash. 259, 105 Pac. 466; *Peese* v. *Gellerman,* 51 Tex. Civ. App. 39, 110 S. W. 196; *Ex parte Bell,* 28 Cal. App. 547, 153 Pac. 240; *Blevins* v. *Underwood,* 232 Ala. 100, 166 So. 801; *People* v. *Davies,* 143 Misc. 759, 257 N. Y. Supp. 118; *Tyner* v. *Tyner,* 206 N. C. 776, 175 S. E. 144; *French* v. *Hux,* (Tex. Civ. App.) 54 S. W. (2d) 539; *Wilkinson* v. *Lee,* 138 Ga. 360, 75 S. E. 477, 42 L. R. A. (n. s.) 1013; *Ex parte Yahola,* (Okl. Supp.) 71 Pac. (2d) 968; *Dickason* v.

*Sturdavan,* (Ariz.) 72 Pac. (2d) 584; 2 Bishop's Marriage, Divorce & Separation, section 1171.

We do not assert that the foregoing cases are in all respects identical with this one on the facts; they do, however, serve to illustrate the point that the parent's right to the custody of his minor child is not an absolute right, even though it be conceded that he is a fit and proper person to have such custody.

Here, through circumstances over which he had no control, the father was deprived of the means of rearing the child in a home of his own. The child will be ten years of age on February 6, 1938. During the nine years since the death of the child's mother, the child has lived elsewhere than with her father, except as to such period of time that the father also lived at the home of plaintiff here, and except for about a year when they were together with a relative in Mississippi. For about six years she has lived with plaintiff and has been well provided for and well trained. The father now proposes to establish a home and have as his housekeeper the half-sister of Marion, now of the age of twenty-two years. There is no assurance that such an arrangement would last. The normal and natural thing for a twenty-two year old girl is to soon leave her parental home and establish one of her own. If that were to happen, then defendant, whose work takes him from his home and a large part of the time without the city wherein he maintains his home, would find it difficult properly to provide for the child. All of these matters were considered by the trial judge. The child has had excellent care and attention in the home of plaintiff, and there is every reason to believe that by reason of the strong affections that have grown between her and the child such care will be continued.

While all members of the court are reluctant to deprive the parent of the custody of his child, we have no hesitancy in holding that the trial judge did not abuse his discretion in holding that the best interests of the child require it to be retained by plaintiff.

Defendant relied upon certain language appearing in the case of *Ex parte Reinhardt,* 88 Mont. 282, 292 Pac. 582, 585, in sup-

port of his contention that he cannot be deprived of the custody of the child in the manner here sought. In that case it was said: "Unless one of the statutory methods of depriving parents of their right to the custody of their children has been pursued, their right continues. (*In re Satterthwaite*, 52 Mont. 550, 160 Pac. 346; *Ex parte Martin*, 29 Idaho, 716, 161 Pac. 573; *In re Hart*, 21 Cal. App. 30, 130 Pac. 704.) This conclusion follows also from section 5841, Revised Codes, which provides: 'The authority of the parent ceases: 1. Upon the appointment, by a court, of a guardian of the person of a child; 2. Upon the marriage of a child; or, 3. Upon its attaining majority.' Under the familiar rule embodied in the statement *expressio unius est exclusio alterius*, the enumeration of these instances, when the authority of a parent over his child ceases, excludes others." That action was one to release the minor from the custody of the sheriff. No legal reason appeared for her detention. While the result in that case was correct, the holding therein that section 5841 is exclusive was erroneous. There is at least one instance wherein the parental authority of the mother ceases without coming within either of the three subdivisions. (See section 5873.) There are other instances in which the parental authority ceases without the express appointment of a guardian. See Juvenile Delinquency Statutes, sections 12275 et seq., and section 5770, relating to the awarding of custody in divorce proceedings.

One other method, and one which is recognized by the authorities generally as above noted, is by estoppel or waiver of the right of the parent by the voluntary establishment of new relations permissively, as here, and where the best interests of the child require those relations thus created to continue.

This court in the case of *In re Thompson*, 77 Mont. 466, 251 Pac. 163, 166, said: "The rule which obtains in most of the courts of this country is that, in awarding the custody of a minor, the welfare of the child is to be regarded more than the technical rights of the parents. This rule has been expressly adopted by legislative enactment in this state by section 5878, Revised Codes of 1921, which declares: 'In awarding the cus-

tody of a minor, or in appointing a general guardian, the court or officer is to be guided by the following considerations: (1) By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare.' "

In the case of *August* v. *Burns*, 79 Mont. 198, 255 Pac. 737, this court affirmed the judgment of the lower court modifying an order appointing a person other than the parent as guardian of the person and estate of a minor, on the ground that the consent of the parent was obtained through mistake. The court used language which would indicate that the only time a parent may be deprived of the custody of his child is when he is not a proper person to have the custody. But, as before stated, there may be an estoppel of the parent, or his right can be and is waived under circumstances such as we have before us here, and which were not present in that case. There was in that case no agreement on the part of the father, as here, to surrender the custody to another, with the understanding that the minor was to be supported and cared for by the latter at his or her own expense.

The case of *In re Green*, 192 Cal. 714, 221 Pac. 903, is relied upon by defendant, but the majority opinion in that case is rested primarily upon the ground that the consent of the parent in relinquishing the custody was not voluntary, as here.

Since the trial judge does not appear to have abused his discretion, the judgment is affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

Rehearing denied February 2, 1938.