JOAN C. CLEVERLY, Formerly JOAN C. STONE, Plain-
tiff and Appellant, v. ROBERT E. STONE, Defendant
and Respondent.

No. 10333
Submitted September 5, 1962. Decided December 17, 1962.
378 P.2d 653

Doepker & Hennessey, Butte, Mark J. Doepker (argued
orally), Butte, for appellant.

Frank E. Blair (argued orally), Virginia City; William F.
Sheehan, Virginia City, for respondent.

HONORABLE CHARLES B. SANDE, District Judge, sit-
ting in place of MR. JUSTICE STANLEY M. DOYLE, de-
livered the Opinion of the Court.

This is an appeal from a decree of the district court of Madi-

son County denying a petition for modification of a divorce decree.

The evidence discloses that plaintiff and defendant were married in February 1959, the plaintiff wife being only sixteen years old at the time. They set up housekeeping in a home situated on a portion of the ranch owned by the defendant's father. This marital relationship soon became inharmonious. The testimony is conflicting as to which party caused the discord, but we see no useful purpose recounting herein the various charges and counter charges in this respect.

In October 1959, a child was born into this unhappy and unstable marriage, but this event did nothing to put it on sounder footing. On the contrary, the discord continued and increased to the point where the plaintiff in July 1960, either left or was put out of the family home, leaving the baby with her husband. Plaintiff went to Livingston to live with friends, eventually bringing the baby there to live with her.

In the meantime, and while still married to the defendant, the plaintiff met her present husband Tony Cleverly, whom she often dated. In September 1960, the plaintiff, desiring to go to Great Falls with Cleverly, contacted the defendant concerning their child. A meeting between the two was arranged in Livingston where they met to discuss the custody of their child. Here again the evidence is conflicting as to what occurred. The plaintiff contends that they agreed on temporary custody, but that after he caused her to get intoxicated, he dictated defendant's exhibit A which she signed, and in which she relinquishes full custody of the baby. On the other hand, the defendant contends that after discussion the parties came to the agreement set forth in defendant's exhibit A, giving him full custody of the infant. Also, at this meeting the defendant gave $550 to the plaintiff to tide her over while she was making up her mind as to their marriage. In any event, the child was turned over to the defendant who returned to his parents' ranch near Alder where he and the

child have lived ever since. Plaintiff went to Great Falls where she lived with Cleverly, his father, and his stepmother.

Around October 20, 1960, the plaintiff accompanied Cleverly to Idaho where they registered at a motel as Mr. & Mrs. Cleverly. Then the plaintiff left Cleverly to go to Alder, Montana, where she visited her husband and their child. At this point, the evidence reveals a series of decisions or indecisions, as the case may be, by plaintiff as to whether she wished to be married to the defendant or to Cleverly. For example, while in Alder, she decided to go back to the defendant who telephoned Cleverly in Idaho to that effect, but before this phone conversation was terminated, plaintiff talked to Cleverly and then decided to return to him. Defendant then drove her to Idaho where she saw Cleverly, but again changed her mind by deciding to go back to the defendant, who refused this proposal. Ultimately, and upon reaching majority, plaintiff married Cleverly, but even after this event she decided to divorce her new husband to remarry the defendant. Finally, she returned to Cleverly and they have remained together ever since.

In August 1960, and before some of the foregoing events had occurred, the plaintiff through her guardian *ad litem* commenced a suit against the defendant in Silver Bow County for divorce. Defendant's answer and cross-complaint requested that plaintiff's action be dismissed and that he be granted a divorce and also custody of the child. A change of venue to Madison County was granted. At this point, the plaintiff demurred to the cross-complaint and answer; this being overruled, she refused to plead further apparently so she could marry Cleverly as soon as possible. Default was entered against her dismissing her complaint, and granting the defendant a divorce and complete custody of the child subject to reasonable visitation rights. The foregoing decree was entered on October 28, 1960. Three days later the plaintiff married Cleverly.

In the present action, plaintiff seeks a modification of the foregoing divorce decree. The district court denied her petition, finding that the interests of the child would be best served if her care and custody is left in the defendant. The court further found that the plaintiff was not a fit and proper person to have the care, custody and control of her child because she was immature, irresponsible in her moods and actions, and of unstable temperament.

On appeal, this court must decide whether or not the district court abused its discretion by refusing to modify the decree awarding custody of the child to the defendant.

Relevant at this point is section 91-4515, R.C.M.1947, which declares:

"In awarding the custody of a minor, * * * the court or officer is to be guided by the following considerations:

"1. By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare * * *."

In Haynes v. Fillner, 106 Mont. 59, 71, 75 P.2d 802, 806 (1938), this court, in considering the foregoing statute, stated:

"In awarding the custody of a child, the paramount consideration is the best interests of the child in respect to its temporal and its mental and moral welfare."

We are mindful of the duty enjoined upon the courts in child custody cases. These are serious social problems which like the instant case, usually arise from unfortunate circumstances. Fortunately, our laws place primary emphasis on the interests of the child. Regarding these controversies, this court in Jewett v. Jewett, 73 Mont. 591, 237 P. 702 (1925), stated:

"When a controversy arises between parents over the right to the custody of children, the duty of deciding it is a delicate one, which is lodged with the district court or the judge thereof. The judge hearing oral testimony, in such a controversy has a very superior advantage in determining the same, and

his decision ought not to be disturbed except upon a clear showing of an abuse of discretion.''

We are convinced from a review of the record here, that the best interests of this child will be served if she is left in the care of defendant. The record shows anything but a mature, stable young mother. It further appears that during the two years that the child has been with the defendant, she has received loving care in stable surroundings.

The court did not abuse its discretion herein and the judgment is therefore affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES ADAIR, CASTLES and JOHN C. HARRISON, concur.