### *In re* RIEMANN.

### *In re* HOLZER.

*(Superior Court of Buffalo, Special Term. April 9, 1890.)*

PARENT AND CHILD—CUSTODY—RIGHTS OF FATHER.

On *habeas corpus* by the grandfather of a child two and a half years old, it appeared that the child's mother had died at the house of petitioner, her father; that the child remained there about one and a half years, when defendant, her father, obtained custody of her, and immediately placed her in an asylum for destitute children; that defendant had not married again, and had no home to which he could take his daughter, and no person who could take care of her; and that petitioner is able to give the child such care as one of her years should have. *Held*, that custody would be awarded to petitioner.

Petition by David F. Riemann for *habeas corpus* to the German Roman Catholic Orphan Asylum and Andrew Holzer to produce the body of Mary Holzer, an infant.

*Fitch & Braunlein*, for petitioner. *Henry W. Brendel*, for defendant Holzer.

TITUS, J. David F. Riemann, the petitioner, procured a writ of *habeas corpus* to be issued out of this court, directed to the German Roman Catholic Orphan Asylum of Buffalo and Andrew Holzer, to produce the body of Mary Holzer. Mary Holzer is the infant child, two years and a half old, of Andrew Holzer, who married Mary Riemann, the daughter of David F. Riemann. About two years ago she died at the house of her father, leaving her surviving her husband, Andrew Holzer, and Mary, her only child. Mary Holzer, the child, continued to live with her grandfather up to about the 13th day of November, 1889, when she was, by direction of the court, placed in the possession of her father, Andrew Holzer. It appears that the father immediately took the child, and placed it in the care of the German Roman Catholic Orphan Asylum, an institution for the care of destitute and homeless children. It remained in the custody of the asylum authorities until about the 26th day of November, when David F. Riemann instituted this proceeding to recover possession of the child. The asylum authorities make no claim to the child, and, from the testimony of the trustees and managers, it appears that they do not want the child, and do not think the asylum is a proper place when a suitable home can be provided for it. It appears that David F. Riemann is a reputable citizen of this city, possessed of considerable property, having a good home, and abundantly able to provide suitable accommodations and such care to the child as one of its tender years should have. It further appears that Mr. Riemann and his family are much attached to the child, having had the care of it since the death of its mother. Andrew Holzer, since the death of his wife, has remained unmarried. He has no female relatives in this country, and no person of his own kindred who can take charge of and care for the child. He is not keeping a house of his own, and, at the time these proceedings were instituted, was boarding with a family by the name of Grimm. It appears that Mr. Grimm is a widower, keeping house with his grown-up children, having a daughter about 30 years old. He oc-

cupies a comparatively small house, and, in addition to himself and four children, has three men boarders. There is some evidence that Holzer is a man of irritable disposition, violent temper, and often gives away to fits of passion. This, Mr. Holzer, by his own affidavit and the affidavits of others who have known him for some time, denies. It is claimed for him that he is a man of quiet, peaceable disposition, of a kindly nature, slow to anger, and never violent.

On the return of this writ it was intimated by the court that the father had the legal right to the custody of his child, and unless it could be made to appear to the satisfaction of the court that he was not a suitable person, or that his circumstances were not such as would promote the best interests of the child, in case she was given to him, the writ would have to be dismissed. Further proof, by affidavit, has been made by both the petitioner and Holzer. On an examination of the authorities, it seems to be the rule, followed in this state in numerous cases, that while the father is the legal custodian of his children, this right is by no means absolute, but is required to yield when the circumstances are such that its observance would be injurious to the children themselves, and the courts have frequently recognized and applied this principle in similar cases. *Mercein* v. *People*, 25 Wend. 64; *In re Watson*, 10 Abb. N. C. 215. The principle recognized, and which seems to govern the courts in the disposition of cases of this character, is the interest of the child. And in some cases the question of the care, health, education, and even future welfare as to matters of property, have been considered sufficient reasons for refusing the father the custody of the child. *In re Welch*, 74 N. Y. 299. In that case it was held by the court of appeals that considerations affecting the health and welfare of a child which, in the judgment of the court, rendered it expedient to leave it temporarily in the custody of an aunt, to whose care it was committed, although its father and mother were at the time living, and of sufficient means to provide and care for it, may justify the court in withholding its custody from them. It seems to me, therefore, that it is only necessary to determine whether the father, as he is at present situated, can give such care to this child as its interests demand, or whether its grandfather is not better calculated, by reason of his family, his attachment to the child, and their affection and ability, to give it better care.

A careful examination of the affidavits presented in the case lead me to the conclusion that, at present at least, the father should not have the custody of the child. The evidence is quite convincing that his desire to get the custody of the child is less on account of his affection for it than his disposition to deprive its grandfather, and especially Agnes Riemann, of it. It is not questioned that at the time the father obtained possession of it the child was receiving every kind and gentle treatment which loving and affectionate relatives could give it; that their affection for the child is unquestioned; that its care and education will be looked after without expense to Holzer; that Mr. Riemann promises, in his affidavit, that if the child shall continue to live with him the interest in his property to which its mother would have been entitled shall go to it on his decease. On the contrary, when the father took the child on the 13th day of November, he at once took it to the asylum, with a view to placing it there. The asylum authorities refused to receive the child without some reason being shown, when he went away, and at night returned with it, with a statement that he had been unable to find any place for it, when they consented to take it on the agreement that he should at once take steps to procure the consent of the trustees of the institution. It appears that at this time there were 125 homeless and destitute children in the asylum; that many of them were sick, and some had died from contagious disease. With this state of things the child was permitted by the father to remain there until he was sent for by the managers on the following Sunday, without once calling to inquire after its comfort or welfare. This, of itself, indi-

cates strongly to my mind that Holzer had no affection for the child, and only cared to deprive its grandfather of the custody of it.

Orphan asylums, although the means of accomplishing much in the way of providing homes for the destitute and homeless, are a necessary evil, and are not designed as homes for children who have relatives able and willing to support them and bring them up as they should be. The child should be in a family, surrounded by its friends, and under their direction; it should have the beneficial influences with which a home life surrounds it. To take a child from such a home, and place it in an asylum, is contrary to every principle relating to the training, education, and government of children. It is the aim of these institutions to find homes among respectable families for the children under their charge, and they are uniformly placed in such homes as soon as such places can be found for them. It may be claimed for Holzer that when he placed the child in this asylum he honestly thought the child would be properly treated and as well cared for as at the home of its grandfather; that it was a proper place for such a child; and that it was but a temporary expedient until he could find a suitable place in some family. He now claims that 'he has found such a home in the family of Mr. Grimm, who is, undoubtedly, a reputable man, and would not suffer harm to come to the child if he knew it.

It is also claimed that, inasmuch as Holzer is now boarding at the house of Grimm, it places the child under his immediate care and supervision, and that it will be equally well cared for and nourished as at the house of Mr. Riemann. I cannot agree in this view of the facts. Mr. Grimm and Mr. Holzer are necessarily away from home at work during the day, and cannot know how the child is being treated or cared for in their absence. He has no wife to take a motherly interest in the child, but it would be left to the care of one of his unmarried daughters, who could not be expected to give it that tender care and patient attention which one occupying the place of a mother can only give. The child is so young that, if it should not be properly cared for through the long hours of the day, it has no one to befriend it and make complaint of its treatment to the father on his return at night, if it should be necessary. Besides, the proposed home for the child is only temporary, and its future one uncertain. It may go from Grimm's to some other place to-morrow, and the assurances which we now have of a present care and home do not furnish very substantial evidence that, so long as the father is without a home, the child may not soon find its way to some asylum.

In the disposition of this case, I recognize and place stress upon the fact that the father has now no home except of such a temporary character as that the interests of the child will be promoted by being permitted, for the present at least, to remain with its grandfather. When he establishes a home for himself, suitable for the child, with some one in charge having his interest at heart, it may then be entirely proper to give him the custody of his child, but until such time it is best that the child should be kept where it now is. The order of the court, therefore, is, that the custody of the child, Mary Holzer, is awarded to David F. Riemann, its grandfather; that Andrew Holzer, the father, may at any and all reasonable time or times visit his child at the house of said Reimann for such reasonable length of time on such visits as a due regard for the convenience of said David F. Riemann will allow; that this order is made without prejudice to the said Andrew Holzer, at some time in the future, on new papers, to make another and further application to the court for the custody of his said child.