[Brown v. Brown.]

# Brown *v.* Brown.

## *Habeas Corpus.*

(Decided June 30, 1911.  Rehearing denied Nov. 28, 1911.
56 South. 589.)

1. *Habeas Corpus; Custody of Child; How Determined.*—Notwithstanding the prima facie rights of the mother ·to the custody of the child the courts must give paramount consideration to the welfare of the child ·in determining whether the mother, who had been deserted by her husband, or the paternal grandfather, should be given the custody.

2. *Same.*—Where a father abandons the mother and child without providing means for their support, he forfeits his right to its custody, and the duty of support and the right of control devolve upon the mother who is prima facie entitled to its custody.

3. *Same; Evidence.*—The evidence in this case stated and examined and held to show that the best interest of the child required that it be placed in the custody of its paternal grandfather, and hence, to justify a conditional judgment remanding the child to his custody, subject to the right of the mother after a reasonable lapse of time, and when subsequent conditions warrant it, to recover the custody thereof.

4. *Same; Scope of Remedy.*—Habeas corpus may be used to determine the custody of an infant child in a contest between the paternal grandfather of the child ·and the mother.

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. O. LANE.

Petition for habeas corpus for the custody of an infant child brought by W. A. Brown, the paternal grandfather, against Mataline Brown, the mother. From a judgment denying relief the petitioner appeals. Reversed and a conditional judgment rendered.

F. E. BLACKBURN, for appellant. On the question of apprenticeship the power to attack it and evidence of it, counsel cites.—*Brinster v. Compton,* 68 Ala. 29; *Cockran v. The State,* 46 Ala. 714; *Owen v. The State,* 48 Ala. 328; Secs. 2907 and 3983, Code 1907. There is no

absolute right either in the father or mother as to the custody of a minor child, and the court will look solely to the best interest of the child in determining its proper custody.—*Kirkbridge v. Harvey,* 139 Ala. 231; *Neville v. Reid,* 133 Ala. 320; *Ex parte Boaz,* 31 Ala. 425; Schouler's Domestic Relation, 336-339, 3343; Hurd on Habeas Corpus, 461.

J. Q. SMITH, for appellee. The court properly overruled the demurrers to the answer.—*Woodlawn v. Durham,* 50 So. 356; *Gloser, et al. v. Muygravity,* 119 Ala. 152. The chancery court has jurisdiction independent of the statute over the custody of infant children.— Story on Equity, 313; *McGough v. McGough,* 33 So. 860; *Pearce v Pearce,* 33 So. 883. The rights of the father may be forfeited by misconduct.—*Ex parte Boaz,* 31 Ala. 425; *Winslow v. The State,* 9 So. 728. The court properly decided the custody of the child to be in the mother.—*Miller v. Miller,* 20 So. 989; *Hernandez v. Thomas,* 39 So. 641; 25 Cyc. 1584; 5 Binn. 520; 76 S. C. 153. As to the rights of parents against the third persons, counsel cites.—*Strickland v. Ware,* 36 Ala. 87; 29 Cyc. 1596.

PELHAM, J.—The petition for habeas corpus filed in this case by W. A. Brown seeks to recover the possession or custody of a minor child about 3 1-2 years of age, Eugene Brown, Jr., by name, who is in the custody of his mother, Mataline Brown; the petitioner being a paternal grandparent of the child.

The petition was denied by the judge of the circuit court of Jefferson county, by whom it was heard, and petitioner brings this appeal for review of the ruling of the lower court; and the question here presented for review is whether, in deference to the infant's welfare,

[Brown v. Brown.]

which all the authorities recognize as the paramount
consideration, the prima facie right of the parent to the
custody of the infant should be interfered with by an or-
der of this court.

The office of the writ of habeas corpus is to release
one illegally restrained of liberty and generally is used
as a "writ of liberty," but in this case the writ is used
for the purpose of contesting private rights; the illegal
restraint complained of being only in the sense that the
custody or restraint is illegal, in that it is not for the
child's best interest or welfare.

. The respondent, Mataline Brown, married the son of
the petitioner, W. A. Brown, in June, 1906, and lived
with her husband at the home in Birmingham of the pe-
titioner and his wife, the parents of her husband, until
after her baby, Eugene, Jr., for whose custody the peti-
tion is filed, was born. The father was improvident, in-
temperate, and addicted to other bad habits, and shortly
after the child was born family differences arose that re-
sulted in the young couple and their baby leaving peti-
tioner's home and going to live to themselves in a home
provided by petitioner in Graymount, a suburb of Bir-
mingham. While living in this home the husband's
habits did not improve, nor did he provide for his family,
and, after living thus unhappily together for some eight
months in the house at Graymount, the husband deserted
the wife and child, leaving them entirely unprovided
for, and went first to New York, and afterwards, return-
ing through Birmingham and staying there a short pe-
riod only, went to California, or somewhere in the West,
where he had been for about two years at the time this
petition was filed. After deserting his wife and child
and leaving them unprovided for, the father has con-
tributed nothing to the support of the deserted wife and
child, and the wife and mother is without property, in-

come, or means of support other than that she may derive from her daily labor, and the child has no estate of any kind.

The evidence, while in conflict with respect to the cause and details of the family troubles, and whose fault occasioned them, as is to be expected in a narration of domestic differences by the parties, yet leaves standing out in bas relief practically uncontroverted one wholesome fact, and that is that either party to these proceedings may properly be intrusted with the care and custody of this infant child and that both are fit, proper, and suitable persons in so far as their good moral character is to be considered. There are, however, other matters of grave importance vitally affecting the infant's present and future welfare that must be considered.

The status of the parties to the proceedings is fixed by settled principles of law. The general doctrine of the common law is established and followed by an unbroken line of decisions that the obligation to maintain, support, care for, and educate the child rests primarily upon the father (*Ex parte Boaz,* 31 Ala. 425; *Neville v. Reed,* 134 Ala. 317, 32 South. 659, 92 Am. St. Rep. 35), but, having abandoned the infant without providing means for its support he thereby, through his misconduct, forfeited his right to its care and custody (*Neville v. Reed, supra; Winslow v. State,* 92 Ala. 78, 9 South. 728), and, this duty and obligation of support and the rights of control having devolved upon the mother (*Englehardt v. Yung's Heirs,* 76 Ala. 534), she became prima facie by the fact of maternity entitled to the custody of the child (*Kirkbride v. Harvey,* 139 Ala. 231, 35 South. 848).

The mother, thus having the prima facie maternal right to care for and have the custody and control of this infant child, transferred the custody of the child, as

[Brown v. Brown.]

shown by the undisputed evidence in the record, to petitioner and his wife, the grandfather and grandmother of the child, during a period of the child's illness in June, 1909, for two or three weeks, having sent the child to them to be cared for during its sickness, thus recognizing that, when the child was sick, the grandparents were more capable than herself of caring for it. The child, having been returned to its mother by its grandparents after recovering from its illness, was again a few days afterwards in July, 1909, sent by its mother to its grandparents, the petitioner and his wife, together with a basket containing the child's clothes. On this occasion the child and its clothes were sent to the grandparents without any solicitation upon their part, and without any explanation upon the mother's part. The grandparents on the initiative of the mother and without objection on her part kept the child about 16 months, or until in November, 1910, giving it kind and affectionate treatment, and caring for its wants and treating it as tenderly and providing for it as if it was their own child, until November, 1910, when the brother of the respondent requested the grandparents to allow him to take the child to see a street parade, representing that the mother would see the child at the parade, and that after the parade was over, he would return the child to the grandparents. This was not done, but, on the contrary, the child was turned over by the respondent's brother to the respondent, who kept the child and refused to give it up, whereupon its grandfather files the petition in this case, seeking custody of the child.

The petitioner, the grandfather of the child, and its grandmother, petitioner's wife, are both people of good character and habits, past the meridian of life, and reasonably endowed with this world's goods, their fortunes being shown to aggregate about $150,000, of which the

petitioner possesses the greater amount, or about $100,-000. The infant child of the respondent is the only grandchild of petitioner and his wife, and has become very dear to their hearts during the time they have had its care and custody intrusted to them by the mother. The respondent, the mother, the unfortunate victim of a marriage to a thriftless man of bad habits, who was cruel in his treatment of her, was deserted with his infant in her arms to care for without means wherewith to provide for herself and child. The evidence shows her moral character to be beyond reproach, and her efforts to earn a livelihood by her daily labors as a seamstress, and her willingness to share her scant earnings in the maintenance and support of her child, deserve commendation. But it is not the interests of the grandparents nor those of the mother, but the best interests of the child and its present and future welfare, that is the principal consideration for the court. *Saunders v. Saunders,* 166 Ala. 351, 52 South. 310. We find from the evidence in the record that the grandparents were loath to take the child and allow it to gain a stronghold in their heart's affection unless they were to be allowed to keep and rear the child. They have a comfortable home, an ample income, and are anxious and capable of bestowing on the child the attention, advantages, and opportunities that its mother cannot. The grandmother is a hale, hearty woman of domestic character, who seldom goes from her home, and is so situated that she can give the infant care and attention throughout the day and night, and constantly, if need be, minister to its childish needs. That she, together with her husband, has formed a deep and lasting attachment for the child, there can be no question, and every act of hers while the infant was in the custody of herself and her husband bears testimony to this fact, and we doubt not, as she

states, that she feels an attachment for and loves the child as if it were her own, having had its almost constant care and training since it was learning to walk until the time of separation from her, when it was about 3 1-2 years of age. Both of these grandparents by their acts and statements consistently show a tender, loving affection that augurs well for the infant's present and future welfare, and their capacity to care for the child in the present and provide for its future is far beyond the possibilities of the mother, who is compelled to leave the child during the long hours of the day, when she is engaged with her work away from home, to the care of a negro servant who does the general housework, and to sub-tenants in her house who are comparative strangers, and can give the child only such attention as they gratuitously can spare from their own children and household duties; and the mother, when she gets home "usually late and always tired," is necessarily unfitted to give the child the care and attention it should have. What if the child should be taken sick? The respondent is dependent upon her daily labors for her livelihood and support of the child, and could not leave her work to minister to the child without sacrificing her means of livelihood. What if she should become too unwell to work? Who would then care for the child? The present arrangement of leaving the child during the work hours with tenants, even if presently satisfactory, is but temporary and uncertain, even speculative, with respect to the future welfare of the child.

The proposition for the court to determine, put in question form, is this: "Will the best interests and welfare of the infant child, which we have seen are to be the primary considerations in controlling the court's action, be sufficiently advanced and served by remanding its custody to the petitioner to outweigh the prima facie

[Brown v. Brown.]

maternal right of the respondent to have the custody of
the infant? When we consider the comforts, care, at-
tention, and advantages that petitioner is anxious to
bestow upon the child, and the superior opportunities
that are assured as a staple and continuing condition as
tending to the health, happiness, and general well-being
on the one hand, and the absence of any permanent ar-
rangement and the impossibility of providing other than
temporary arrangements of an unsatisfactory character
upon the other hand, and when we take into considera-
tion, also that the maternal feeling for possession was
not so strong but that the child was sent to the petition-
er's home by the respondent in recognition of the fitness
and superior capability of petitioner to care for it, and
that the respondent visited and inquired about the child
not more than five or six times during the entire seven-
teen or eighteen months it was left with petitioner, and
that, when respondent regained possession, she did not
do so, as she admits, with any intention of keeping the
child permanently or even have such an idea in mind (or
impulse in the heart, so far as the evidence disclosed),
until after the child was brought up to see the street
parade by her brother; when we weigh these matters,
together with all the other facts presented, in the light
of the child's well-being as of paramount consideration
—the question presented answers itself, for the circum-
stances and conditions are such, as shown by the evi-
dence in the record, that there is no escape from the con-
clusion that during the period of helpless infancy the
care and custody of the child should be committed to the
petitioner. The conclusion reached on the merits makes it
unnecessary to pass upon the court's rulings on the
pleading. Whether or not the letters of apprenticeship
issued by the probate court were void because no notice
was given the mother, or voidable only, and not subject

to collateral attack; is also unnecessary to determine under the ruling made on the petition and answer.

The judgment appealed from will be reversed and judgment here rendered granting the petition of appellant in so far that the custody of the minor child, Eugene Brown, Jr., is remanded to the petitioner on the condition that the respondent shall have the right, if she desires to exercise it, of visiting the child on one day in each week.

Under changed conditions, the respondent would not be estopped, after a reasonable lapse of time, from having her rights passed upon under such subsequent conditions and circumstances as might arise. *In re King,* 66 Kan. 695, 72 Pac. 263, 67 L. R. A. 783, 97 A. St. Rep. 399.

Reversed and conditional judgment rendered remanding custody of minor to appellant.