### 10286

### GILL v. WALKER *ET AL.*

#### (100 S. E. 894.)

1. HABEAS CORPUS—CUSTODY OF CHILD; BEST INTEREST AS DETERMINING ELEMENT.—While the legal and moral claims of claimants to custody of a child may not be ignored in disposing of such custody, the paramount consideration of the Court is the welfare of the child, and as a general rule it should be placed where its best interests will be subserved.

2. HABEAS CORPUS—CUSTODY OF CHILD; EVIDENCE.—In *habeas corpus* by the sister of an infant against its grandparents to determine the right of custody, evidence *held* to sustain a finding that the custody was properly awarded petitioner.

Before MEMMINGER, J., Chester, Fall term, 1919. Affirmed.

*Habeas corpus* by Bessie Gill against Neely Walker and others, to determine the right to custody of Mattie Ree Meeks, an infant. Judgment for petitioner, and defendants appeal.

*Messrs. Marion & Marion* and *Gaston & Hamilton,* for appellants. *Messrs. Marion & Marion* submit: *Probate Court had jurisdiction to appoint the appellants general*

*guardians:* Vol. II, Code of Laws S. C. 1912, sec. 43. *Duly appointed general guardian is entitled to the custody of the ward:* 21 Cyc. 62; 21 Cyc. 64; 112 Ind. 183; 2 Am. St. Rep. 177. *Probate Court has power to enforce its decree:* Vol. II, Code of 1912, sections 51 and 52 and 75. *Possession of guardian lawfully appointed could not be illegal detention:* 4 Minn. 412; 77 Am. Dec. 534. *Circuit Judge had no power to abrogate the decree of the probate Judge, except upon the ground of the infant's obvious best interest:* 4 McC. 233; 15 S. C. L. 233.

*Messrs. Hemphill & Hemphill* and *S. E. McFadden,* for respondent. *Messrs. Hemphill & Hemphill* submit: *Findings of fact by the Circuit Court are not reviewable, and this Court will only consider whether the exceptions show error of law or abuse of discretion:* 84 S. C. 476; 55 S. E. 326; 19 S. C. 604. *Appellants cannot claim infant through a subsequent deed given them by the father:* 84 S. C. 552. *Nor can appellants claim infant because of alleged parol gift:* 73 S. C. 296. *As to the right of the probate Judge to order deputy sheriff to seize the person of infant, take it from Bessie Gill and deliver it to appellants:* 72 S. C. 16; Code of Civil Procedure 1912, sec. 38; Civil Code 1912, vol. I, sec. 2689; Code of Civil Procedure 1912, secs. 42, 43.

November 11, 1919.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

This is a proceeding in *habeas corpus* to determine who is entitled to the custody of Mattie Ree Meeks, the infant daughter of Mattie Meeks, deceased, who was the daughter of Neely and Mattie Walker, and the sister of Bessie Gill. After hearing the evidence, the Circuit Court awarded the custody of the child to Bessie Gill.

In 1911, Mattie, the deceased, married Sam Meeks, and they lived in the house with her parents, until she died, in

1915, leaving two children, Seretha and Mattie, the subject of this controversy, who was only five days old when her mother died. About two months after the death of its mother the child was turned over to Bessie Gill, who kept it until October, 1918, when it was taken from her and delivered to its grandparents, under an order of the probate Court, appointing them guardians of its person and property.

The evidence is conflicting as to the agreement under which Bessie took the child. That introduced by her tends strongly to show that her mother, Mattie Walker, asked her to take it, because it was sickly and puny and required more care and attention than she could give it on account of her advanced age, physical infirmities, and the other cares and duties incumbent upon her, especially the care and attention which she was obliged to bestow upon the older child, Seretha, and for these reasons, after obtaining the consent of her husband, she agreed to take it and raise it as one of her own—she has five of her own—and did so until it was taken from her; that she has become very much attached to it, having taught it to call her mother, and has bestowed upon it the utmost care and attention, without which it would have died; that it was carried to her house by Sam, who expressed his consent that she should have it and his delight that it had found so good a home.

On the other hand, the testimony on the part of the grandparents tends to show that the arrangement with Bessie was intended to be only temporary, and that they compensated her, at least in part, for her care and attention of the baby.

While the legal and moral rights of the claimants to the custody of a child may not be ignored, in disposing of its custody the paramount consideration of the Court is the welfare of the child, and as a general rule it should be placed where its best interests will be subserved.

Without going into a detailed consideration of the evidence, which would serve no useful purpose, but giving due

weight to everything that has been pressed upon our attention for and against the contentions of the respective parties, we are of the opinion that the decision of the Circuit Court was right, and it will be affirmed, with this reservation: That the grandparents and sister of the child must have reasonable opportunity to visit it and have it visit and be with them on proper occasions and at reasonable intervals. The parties live in the same community, very near to each other, and the litigation does not seem to have disturbed the paternal and filial relations between them, and there is no reason why they should not be able to agree amongst themselves about the matter, but if they cannot they may apply to the Court for its directions.

Judgment affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and GAGE concur.

MR. JUSTICE FRASER. I dissent. First. The record shows that the appellants applied to the probate Court for an appointment as guardians of the infant in dispute; that there was an order that the petitioner show cause why the appointment should not be made permanent. This rule seems to have been ignored. This the petitioner had no right to do. If authority for this is deemed necessary, it will be found in Ruling Case Law, vol. VII, p. 1067, where it is said:

"It is a familiar principle that, when a Court of competent jurisdiction acquires jurisdiction of the subject matter of a case, its authority continues, subject duly to the appellate authority, until the matter is finally and completely disposed of, and no Court of co-ordinate authority is at liberty to interfere with its action. This is applicable both to civil cases and to criminal prosecutions."

In _Ex parte Townes,_ 97 S. C. 56, 81 S. E. 278, it was held that it is the duty of a citizen to heed the mandate of

a Court even where the Court was without jurisdiction of the person of the defendant. I do not think the petitioner had the right to ignore the mandate of the probate Court, or that this Court should entertain these proceedings.

Second. I do not think a Court should determine so important a question as the permanent guardian of an infant on *habeas corpus* proceedings. In these proceedings the evidence is by affidavit, and in this very case the petitioner in her argument feels the handicap, and asks this Court to make allowances for it. The Courts are slow to fix any permanent rights on affidavits. How much more careful should they be in fixing the physical, intellectual, nd moral environment of a child at its most impressionable period.

Unquestionably *habeas corpus* is a proceeding at law. The appointment of a guardian is the highest prerogative of the Court of chancery, and the shorthand proceeding at law should not be allowed to oust the jurisdiction of chancery.

In *Ex parte Richards, 2* Brev. 376, it was said that by legislative act the Courts of Common Pleas, then a Court of law only, was given concurrent jurisdiction of appointment of guardians with Courts of equity.

Third. On the merits. Much has been said in this case about the hardship of depriving the parties to this proceeding of the custody of the child. That has nothing to do with this case. The respondent seeks by this proceeding to have the presence of this child in her house. She, however, is not in supreme control of her home. Her husband, William Gill, is the head of that houshold, not only in law, but in fact. There is testimony against William Gill as to drunkenness, violence of disposition, and general crookedness. This Court should not find against him on either charge from this record, nor by any number of affidavits. There is no word of testimony to show that the environment

at the home of the grandparents would endanger the person or morals of the infant. The infant may go to one of two places; one is safe, the other at least doubtful. In this condition of affairs, I do not think this Court should hesitate for a minute to send the child to the safe place. The proof is not conclusive, but it may be that William Gill does get drunk on liquor, not allowed by law, and is a man of violence and in his rage, drunk or sober, does beat his wife and pursue her with a shotgun, when in his tantrums. If these things are true and the Court has been warned of them, then William Gill's house is not a safe place for that child. Mattie Ree Meeks is not the child of William Gill, nor is she blood kin to him. William Gill may be all he ought to be. There is evidence that he is not, and evidence enough to warn me not to take the risk.

There is evidence that William Gill has said that he would relinquish all claim to the child for $300. That may not be true, either. Unless I can know that it is not true, I cannot consent to commit the child to what is really his custody.

Fourth. To my mind there is another objection to the appointment of the petitioner that is insuperable. Mattie Ree Meeks has no brother and only one sister, and this sister is to remain with her grandparents. In my judgment the appointment of the petitioner as guardian separates these two sisters. I do not take the view that the separation will be only nominal. The appellants, it appears, did not take a deed to Mattie, because they thought it treated their granddaughter as a chattel. If this is an index to their characters, then they will not feel at liberty to visit at the house of a son-in-law whom they and their affidavits have denounced as dangerous and unworthy, because they must be, to the head of the house, unwelcome guests. I fully concur in the finding that from what appeared in Court there is no antagonism between the appellants and the respond-

ent.   There is ill feeling in the case on the part of William, and I think the separation of these two children will be even more complete than if they lived farther apart.

In my view the appointment of the petitioner is manifest error.

For these reasons I dissent.