In re BORCHERDING'S CUSTODY.

No. 31735. Oct. 2, 1945.

*162 P. 2d 184.*

H. A. Ledbetter, of Ardmore, for plaintiffs in error.

Champion & Fischl, of Ardmore, for defendants in error.

WELCH, J. The respondents, the maternal grandparents of the boy, have appealed from an order and judgment granting custody of the child to petitioners, the paternal grandparents.

The boy is now nearly twelve years old. His parents became estranged and separated when the child was very small. For a period he dwelt first with his maternal grandparents and then with his paternal grandparents until his father died in September, 1938, when the child was a little past four. Since then the child has spent some time with his paternal grandparents, but has lived principally with his maternal grandparents at the instance of his mother. The mother, who has not remarried, is mostly away in employment, returning intermittently and for varying periods to the home of her parents. The child's maternal grandparents are tenant farmers and the paternal grandparents dwell in the city.

The paternal grandparents are more than 75 years of age and are not well circumstanced; however, with their old age assistance which both receive from the state, and help from their children, they rent and maintain a home which, though small, is wholly comfortable. The maternal grandparents are about 25 years younger, and though tenant farmers, have maintained themselves in substantial comfort, and with the aid of this child's mother have fairly well maintained the child.

The trial court was of the view that at least temporarily the child would be better provided for if placed in the custody of his paternal grandparents so as to be enrolled in the city schools.

Although it was contended in the trial court that the maternal grandparents were unfit persons to have the custody of the child, the trial court did not so conclude and find, but rested his determination on the stated conclusion that the child had better be placed with his paternal grandparents so as to be enrolled in the city schools; however, the trial court stated that the record discloses that the child has not been seriously handicapped by his previous schooling. And the trial court emphasized the fact that his conclusion and determination was rather of a temporary character. At the same time the trial court permitted the child to remain with the maternal grandparents pending this appeal, thus indicating or confirming the thought of the trial court that no serious ill or evil need be anticipated from leaving the child in the company and custody of its maternal grandparents.

We are definitely impressed with the testimony of the boy himself. He was first examined by the trial judge in his chambers and then upon the witness stand. It is impressively demonstrated that he possesses development and maturity well above his age. He has a definite preference to remain with his maternal grandparents.

The paternal grandparents, though splendid citizens, and earnestly desiring the care of their grandson, cannot be expected to survive in full strength and

vigor for a great many more years, and if we now permit this boy to be taken from his younger maternal grandparents, it is wholly possible that within a few years he might from natural causes be deprived of care by his paternal grandparents, while having been deprived of care from his maternal grandparents by the courts. The paternal grandmother is now not in robust health. Unfortunately she is now almost an invalid, and the paternal grandfather evidently is not able to be constantly employed.

The conclusion of the trial court that the boy had better be enrolled in the city schools may be sound, but we fully agree with the trial court that the record discloses that this boy has not been seriously handicapped by his previous schooling. He has not been so handicapped and the record does disclose it. We are satisfied that whatever temporary benefit might be expected from enrollment in the city schools as against other schooling available should not be taken as sufficient to outweigh or even balance the considerations which dictate that the boy should be left with his maternal grandparents, who are younger and more vigorous, where this boy, who is far more than a child, desires to remain, and impressed as we are with his stated reasons for that preference.

We observe the trial court undertook to make careful arrangements for the maternal grandparents to visit the child at his home in the city, with similar provision for the mother to see him and to seek his custody herself when she is definitely and permanently located. However, the cross feelings or ill feelings necessarily engendered by this proceeding and trial would hardly admit of much association between this boy and his maternal grandparents so long as he is required, against his will, to remain at the city home of his paternal grandparents.

We do not imply that this young man has any feeling whatever against his paternal grandparents. On the contrary, while preferring to be located with his maternal grandparents, he is nevertheless attached to his paternal grandparents and they are devoted to him. That is as it should be. Our decision should preserve and promote this status with all its wholesome benefit, insofar as we can accomplish that purpose. With this boy definitely located with his maternal grandparents he would doubtless want to continue his visits with his paternal grandparents in the future as he has been accustomed in the past. And in that circumstance doubtless the maternal grandparents would feel no reluctance in permitting and encouraging such visits in the future as they have in the past, knowing as they would that their present custody coincided with the boy's desires; and all appreciative of the fact that in a very few years the boy would have definite legal rights of his own as to the fixing of his custody. Thus we are convinced that a conclusion is dictated which will preserve the status quo, leaving custody with the maternal grandparents, and that such conclusion offers the best promise of placing this boy presently where he would be best satisfied and contented and in the better place to look forward to some care and guidance from both maternal and paternal grandparents. We may safely assume that his present care by his maternal grandparents will be of reasonably satisfactory character, and there is nothing to the contrary in the trial court's finding.

We deem it our duty, upon review of the entire record, including all the evidence and the announced conclusions of the trial court, to render or cause to be rendered the judgment which the better commends itself to this court, and upon full consideration we have determined it to be our duty to award custody to the appellants, the maternal grandparents; this upon our conclusion that the judgment and order of the trial court is clearly against the weight of the evidence.

There is also presented the view that the district court was without jurisdic-

tion, since the cause as commenced was in the nature of habeas corpus. It is suggested that grandparents have no definite authority or right to proceed by habeas corpus, and therefore in an action so commenced the district court has no jurisdiction to determine the conflicting claims of maternal and paternal grandparents as to which should have or retain custody of the grandchild.

We observe the statute, 12 O.S. 1941, § 1354, which deals generally with the granting of habeas corpus for the protection of infants. In Ferriss Extraordinary Legal Remedies, page 22, § 3, and on pages 26, 28, 58, 95 and 96, the author deals extensively with the origin and subsequent development of the writ of habeas corpus to include such matters as are here presented and involved. Further excellent text statements appear in 39 C. J. S. (Habeas Corpus) page 574, sec. 41, and 27 Amer. Juris., pages 829 and 832, and in 25 Amer. Juris., page 202.

Such general development of the writ of habeas corpus in such cases is demonstrated and applied in Finlay v. Finlay, 240 N. Y. 429, 148 N. E. 624, 40 A. L. R. 937; In re Rieman (In re Holzer), 10 N. Y. Supp. 516; Brown v. Brown, 2 Ala. A. 461, 56 So. 589; Armstrong v. Armstrong, 196 Iowa, 949, 192 N. W. 146; Gill v. Walker, 113 S. C. 39, 100 S.E. 894; Brown v. Harden, 150 Ga. 99, 102 S.E. 864. See, also, Popham v. Cross, 41 Okla. 629, 137 P. 673.

We have not overlooked authorities cited in an effort to sustain a contrary contention such as In re Stewart, 138 Wash. 59, 244 P. 116; In re Pool, 2 MacArthur (9 D.C.) 583; In re Allen, 76 S. C. 151, 56 S. E. 786; The Text of Bailey on Habeas Corpus, sec. 148; People v. Mercein, 3 Hill, 399, 38 Amer. Dec. 644; Milligan v. Childrens' Home, 97 Ind. 355.

Insofar as it is necessary to determine that point, we here assume and conclude that the district court had jurisdiction and that we have jurisdiction to consider the matter on its merits. And we have concluded that we should reverse the judgment on the merits.

Therefore, the judgment is reversed, and the cause remanded, with directions to render judgment denying the relief sought by the plaintiffs or petitioners, and continuing custody of the minor in and with his maternal grandparents.

GIBSON, C. J., HURST, V. C. J., and OSBORN and BAYLESS, JJ., concur. RILEY, CORN, and DAVISON, JJ., dissent.

CORN, J. (dissenting). I cannot agree with the majority opinion, because the application for the writ, in my judgment, does not state facts sufficient for the trial court to entertain jurisdiction of the cause. Proper and timely objection to jurisdiction was raised in the trial court.

This is an appeal by the maternal grandparents of Louis Winton Borcherding, a minor, from a judgment of the district court of Carter county in a habeas corpus proceeding awarding custody of said minor to its paternal grandparents.

It is alleged in the application for the writ, in substance: That C. H. Borcherding and Phoebe J. Borcherding are the paternal grandparents of Louis Winton Borcherding, a boy ten years of age, and they are entitled to his custody.

That he is in the custody of Mr. and Mrs. John Venters, his maternal grandparents, but it is not to the best interest of said minor that he remain in their custody for the reason they are unfit persons for him to live with.

That the father of said minor is deceased and the mother has abandoned and deserted him.

Under section 1331, Title 12 O. S. 1941, it is provided:

"Every person restrained of his liberty, under any pretense whatever, may

prosecute a writ of habeas corpus to inquire into the cause of the restraint, and shall be delivered therefrom when illegal."

Under section 1332 of Title 12 of the Statutes, supra, it is provided:

"Application for the writ shall be made by petition, signed and verified either by the plaintiff or by some person in his behalf, and shall specify:

"First: By whom the person in whose behalf the writ is applied for is restrained of his liberty, and the place where, naming all the parties, if they are known, or describing them, if they are not known.

"Second: The cause or pretense of the restraint, according to the best of the knowledge and belief of the applicant."

Section 1354 is as follows:

"Writ of habeas corpus shall be granted in favor of parents, guardians, masters, husbands and wives; and to enforce the rights and for the protection of infants and insane persons; and the proceedings shall, in all such cases, conform to the provisions of this article."

This court is called upon for the first time to determine whether habeas corpus proceedings will lie in favor of grandparents under section 1354, supra.

In re Stuart et al., 138 Wash. 59, 244 P. 116, wherein the grandparents were trying to get custody of their grandson, the Supreme Court of Washington construed an almost identical statute to section 1354, supra, to wit:

"In view of Rem. Comp. Stats. § 1064, grandparents held not entitled to writ of habeas corpus for discharge of minor from custody and control of mother, on ground that its best interest and welfare required that they be granted control.

"Appellants contend that in this kind of an action the welfare and best interests of the child are always controlling.

"Our statute (section 1064, Rem. Comp. Stats.) provides:

" 'Writs of habeas corpus shall be granted in favor of parents, guardians, masters, and husbands, and to enforce the rights and for the protection of infants and insane persons. . .'

"Under a similar statute in Indiana, the Supreme Court of that state, in McDonald v. Short, 130 N. E. 536, 190 Ind. 338, held that the procedure relating to the discharge from restraint or custody of a minor child was governed by the statute; and that, while parents might have the benefit of such writ to obtain possession of their child, even parents must by their application exhibit evidence showing that they are entitled to this extraordinary remedy, which is not regarded as a civil action. It was there observed that—

" 'As generally understood, the writ of habeas corpus is a writ of liberty, and its original purpose was the release of persons illegally or forcibly imprisoned.'

"In all cases and texts that have been cited and that we have examined, it is uniformly held that writ of habeas corpus will only be granted, in the case of an infant, where the applicant shows a prima facie legal right to the custody of the infant. Bailey on Habeas Corpus, § 148; Church on Habeas Corpus, § 440; 29 C. J. § 102; In re Poole, 2 MacArthur (9 D. C.) 583, 29 Am. Rep. 628; Re Allen, 56 S. E. 786, 76 S. C. 151, 9 L. R. A. (N. S.) 1173; In re Harper, 2 Irish Rep. (1925) 571. We have ourselves held in Morin v. Morin, 119 P. 745, 66 Wash. 312, 37 L. R. A. (N. S.) 585, that the grandparents of a child have no natural or inherent right to the custody of the child.

"Since our statute gives the right of action to enforce the rights and for the protection of infants and insane persons only to parents, guardians, masters, and husbands, in the case before us the grandparents could not show a prima facie right to the custody of the child."

"Any person entitled to the custody of an infant may maintain habeas corpus proceedings to obtain it. Thus a parent or a guardian may avail himself of the writ." 39 C. J. 579, sec. 42.

"In order to invoke the aid of habeas corpus for the purpose of determining the right to the custody of an infant, the applicant for the writ must show

that he has a prima facie legal right to such custody." 25 Am. Jur. 204 § 79.

Section 1354, supra, provides that parents, guardians, masters, husbands and wives have the right to make application for the writ, but does not designate grandparents; they are therefore excluded.

I find in 59 C. J. 984, sec. 582:

"In acordance with the maxim, 'expressio unius est exclusio alterius,' where a statute enumerates the things upon which it is to operate, or forbids certain things, it is to be construed as excluding from its effect all those not expressly mentioned; and where it directs the performance of certain things in a particular manner, or by a particular person, it implies that it shall not be done otherwise nor by a different person. . . ."

Under an interpretation that the statute does not exclude all persons not expressly mentioned therein, obviously the purpose of the statute would be destroyed, and any person, even a stranger, would have the same right to maintain such action as a parent or any other enumerated person has to maintain the action.

I am not cited to any authority in the absence of illegal restraint holding that grandparents can maintain habeas corpus proceedings to obtain custody of their minor grandson on the grounds that the place he is staying is an unfit place for him to live, or that he is abandoned by his mother.

If the minor is being kept in an unfit place or abandoned by its mother, as alleged in this application for the writ, a remedy is provided by Title 10, chapter 5, O. S. 1941, which in part is as follows:

"This article shall apply to any child under the age of sixteen years not an inmate of a state institution incorporated under the laws of this state. For the purpose of this article the words 'dependent child' and 'neglected child' shall mean any male child under the age of sixteen years and any female child under the age of eighteen years who for any reason is destitute, homeless or abandoned; or dependent upon the public for support; or has not the proper parental care or guardianship; . . ."

Section 102 of this act, supra, provides:

"The county courts of the several counties in this state shall have jurisdiction in all cases coming within the terms and provisions of this Article. . . ."

The authorities cited by the majority opinion are not applicable to the facts in this case. They are cases wherein the proper person brought the action as he had a natural inherent right or a prima facie legal right to the custody of the child.

The majority opinion does not cite any authority, nor am I able to find any, holding that the district court has jurisdiction upon an application by grandparents for a writ of habeas corpus wherein it is only alleged that the place where the child is staying is an unfit place for him to live and that he has been abandoned.

Under the facts in this case the district court of Carter county was without jurisdiction to maintain the action.

I respectfully dissent.