Ex parte MOULIN.

No. 34095. April 4, 1950.

Rehearing Denied April 25, 1950.

Second Petition for Rehearing Denied May 16, 1950.

*217 P. 2d 1029.*

Paul W. Updegraff, of Norman, for petitioner.

Williams & Benedum, of Norman, Rosenstein, Fist & Shidler, and Leslie Webb, all of Tulsa, for respondent.

Mac Q. Williamson, Atty. Gen., Claude E. Love, Division of Child Welfare, Department of Public Welfare, State of Oklahoma, Gus Rinehart, Gomer Smith, Gomer Smith, Jr., Tom S. Williams, and E. M. Box, all of Oklahoma City, and James B. Miller, of Shawnee, amici curiae.

GIBSON, J. This is an original proceeding by Martin Herbert Moulin, Jr., for a writ of habeas corpus directed to Leonard R. Brooks for the custody of two minor children.

Subsequent to the filing of the petition this court granted the writ and referred the matter to the Honorable Ben T. Williams, judge of the district court of Cleveland county.

On October 24, 1949, Judge Williams, having concluded the hearing, made written report of his findings of fact and conclusions of law.

The findings of fact, which we approve, are as follows:

"1. The minor children herein involved, are the twin daughters of Petitioner and of the deceased sister of Respondent.

"2. Their Mother was divorced from Petitioner in April, 1945, and she was remarried in Sept. 1945, to one Captain Griffin, who was later sent to Germany with the U. S. Army occupation forces.

"3. In order to assist his former wife, then Mrs. Griffin, get clearance to take their daughters to Germany so the wife might live with her husband, Petitioner signed a consent for Captain Griffin to adopt such children through the Arkansas Court.

"4. Thereafter both Mrs. Griffin and the Captain met their deaths in Germany in July, 1948, and the twin daughters of Petitioner were returned to Arkansas to the mother of Captain Griffin, who had her daughter to bring them to Tulsa, Oklahoma, and who in turn delivered them to respondent.

"5. Respondent filed an action in Cleveland County, Okla. in the County Court, to have himself appointed Guardian of such children, and a separate proceeding in the same Court to adopt such children, being joined in the latter suit by his wife, and being opposed in the latter by Petitioner herein. Both actions are still pending.

"6. Respondent and his wife are fit and proper persons, have a suitable home and the likelihood of continuing sufficient income to provide suitably for the children.

"7. Petitioner and his wife are fit and proper persons, having a suitable home and the likelihood of continuing sufficient income to provide suitably for the children."

The pertinent conclusions of law which are in question are numbers 1 and 2, which are as follows:

"1. The benefit of Petitioner's consent for the adoption by Captain Griffin of Petitioner's children was by law limited to Captain Griffin, the beneficiary thereof.

"2. Upon the death of Captain Griffin and wife, the petitioner's rights theretofore relinquished to Captain Griffin, in the adoption proceedings, were by law reinvested in himself, he being the natural father."

Respondent challenges the correctness of said conclusions and contends that as a result of the adoption petitioner was by law deprived of all right concerning the care and custody of the children; that such right was not restored upon the death of the adopting parents and therefore petitioner is without right to invoke the aid of habeas corpus to obtain their custody.

Petitioner contends that the conclusions of law are sound and that he, being reinvested with his former rights as parent, is entitled to invoke habeas corpus to obtain the custody of the children.

The first question is, whether, under the circumstances, the petitioner is a parent. The answer thereto involves a determination of the effect of the adoption and whether such effect was altered by the fact of the deaths of the adopting parents.

The validity of the Arkansas decree is not called in question, therefore, the same is entitled to full faith and credit under the Federal Constitution (1 Am. Jur. 627, sec. 10).

As stated in American Law Institute's Restatement of the Law of Conflict of Laws, sec. 143:

"The status of adoption, created by the law of a state having jurisdiction to create it, will be given the same effect in another state as is given by the latter state to the status of adoption when created by its own law."

Since the matter of adoption was unknown at common law, the questions arising thereunder are referable to the statutory authority therefor. These statutes vary in the different states, but the general effect thereof, concerning the questions here involved, is stated in 1 Am. Jur. 650, sec. 51, as follows:

"It is a general principle that a statutory proceeding of adoption, when legally conducted, terminates absolutely all legal relations between the minor and his natural parents or former legal guardian. Hence, in the case of a second adoption of a child under a statute providing that an adopted child may be adopted directly from its foster parents by another person 'in the same manner as from parents, and as if such foster parents were the parents of such child,' it is not necessary to give notice to, or to obtain the consent of, the natural parents or the survivor of them. This has been held to be so even though at the time of the second adoption the first adopting parents were deceased. A contrary view as to this question prevails, however, in some jurisdictions, and there the death of the foster parent is held to reinstate the natural parent in all his rights.

"The statutes themselves frequently contain provisions on this subject and should be consulted."

The basis of the majority rule is the termination by the adoption of the legal relations between the minor and his natural parents. As authority for the contrary view there is cited Magevney v. Karsch, 167 Tenn. 32, 65 S. W. 2d 562, 92 A.L.R. 343, and Annotation in 12 Ann. Cas. 509, wherein is cited Baskette v. Streight, 106 Tenn. 549, 62 S. W. 142. It is upon the last mentioned case and Dwyer v. Dwyer, 366 Ill. 630, 10 N. E. 2d 344, that petitioner chiefly relies for support of the conclusions of law. The factual situation in the Baskette case, supra, is reflected in the second editorial syllabus, as follows:

"The mother is not estopped by joining in the adoption proceedings and surrendering her parental rights in a child to the adoptive father from asserting such rights against the adoptive father's widow, who was not a party to the proceedings."

As ground therefor it is said in the opinion:

" . . . But it is perfectly plain that under the express provisions of the statute the relation of parent and child was only established with James P. Streight, and that Mrs. James P. Streight was a stranger to the adoption proceedings, and can now assert no legal rights to the custody of the child.

"It is said, however, that petitioner having joined in the adoption proceedings surrendered her parental rights, and is now estopped to assert them. This would undoubtedly be true in a contest with James P. Streight, the adoptive father, but the latter having died, there is now no room whatever for the application of an estoppel. We can well see how a mother might be willing to waive or entirely surrender her parental rights in favor of one person and be wholly unwilling to relinquish them to another. One person, on account of his character and financial ability, might be a very suitable custodian for a child, and these considerations would probably enter very largely in the equation influencing the mind of the parent. Moreover, adoption statutes, being in derogation of the common law, are strictly construed, and cannot by intendment be held to confer rights upon persons who are not parties to the record, and who have assumed no legal obligations as adoptive parents."

The holding in the Dwyer case is sufficiently reflected in the first three paragraphs of the editorial syllabus, as follows:

"1. An adoption of a child under adoption act depriving natural parents of all legal rights as respects the child does not relieve natural parents from all obligation to support child (Smith-Hurd Ill. Stats. c. 4, secs. 3, 5, 8).

"2. The primary duty of adoptive parents under statute to support child is in derogation of the general law, and for that reason, as to adopted child, statute must be strictly construed.

"3. Courts of general jurisdiction have power to construe statutes to ascertain legislative intent."

The common basis of these holdings is that the effect of the adoption was not to extinguish the legal relation that gives rise to the parental rights and duties but was to impose upon another the exercise of the right and duties thereof to the exclusion of the natural parent, and, hence, with the death of the adoptive parent the exercise of such rights and duties thereafter devolved upon the natural parent as a matter of law by reason of the continued relation of parent and child no longer trammeled by the adoption. It is clear, therefore, that the doctrine is necessarily predicated upon the fact the adoption did not terminate the rights and duties arising out of the relation of parent and child, and therefore can have no application where the adoption, as a matter of law, does terminate such relation. No case is cited, and we know of none, that holds the natural parent is restored to the rights and duties of natural parents upon death of the adoptive parent where the parental relationship of the former had been terminated by the adoption. Cases to the effect that there is no restoration in such circumstances are numerous and are cited in support of the text. (1 Am. Jur. 650, sec. 51, quoted, supra.)

Pertinent illustrations of the holdings therein are to be found in Re Macrea, 189 N. Y. 142, 81 N. E. 956, 12 Anno. Cas. 505, wherein it is held in the first syllabus:

"Domestic Relations Law, Laws 1896, p. 227, c. 272, sec. 64, provides that, after adoption, the parents of the minor are relieved from all parental duties toward and of all responsibility for and have no rights over the child or to his property by descent or succession; that the foster parent or parents sustain toward each other the legal relation of parent and child, and have all the rights and are subject to all the duties of that relation, etc. Held, that a valid adoption divests the natural parents of the relation which they had theretofore sustained toward the child, which change of relation is not affected by the death of the foster parents."

In Re Masterson's Estate, 45 Wash. 48, 87 P. 1047, 122 Am. St. Rep. 886, it is said:

" . . . By the decree of adoption the child became, to all intents and purposes, the child of her adoptive mother, and continued to be such even after her death. The natural parent, by her voluntary act in consenting to the

adoption of her child by another, became divested of all legal rights and obligations in respect to such child, and the situation was not changed by the death of the adoptive parent."

And in Re Jobson's Estate, 164 Cal. 312, 128 P. 938, 43 L. R. A. (N.S.) 1062, it is said:

" . . . The duties of a child cannot be owed to two fathers at the same time. If the decedent, Frederick Cox Jobson, had died intestate, leaving surviving both his natural father and his foster father, Frederick Cox, it cannot be doubted that the latter would have been entitled to inherit such porttion of the decedent's estate as, under our statute of distribution, descended to the father. The appellant, E. C. Jobson, the natural father, would have been entitled to nothing, for the reason that he had, by virtue of the adoption proceeding, ceased to sustain the legal relation of father to the decedent. Is this situation altered by the fact that the foster father died before the adopted child? We do not see that it is.

"There is nothing in the statute which limits the effect of the adoption to the period of the lives of the adopting parent and the adopted child. To sustain the appellant's contention, we should have to hold that, although the relation of parent and child existing between him and the decedent was supplanted by the new relation created by the adoption, it was again revived by the death of the foster parent. Such a holding would be to make, rather than to construe, a statute. Once we have reached the conclusion that the effect of an adoption under the Code is to substitute the adopting parent for the parent by blood, we must give to that conclusion its logical results. From the time of the adoption, the adopting parent is, so far as concerns all legal rights and duties flowing from the relation of parent and child, the parent of the adopted child. From the same moment, the parent by blood ceases to be, in a legal sense, the parent. His place has been taken by the adopting parent."

The statutory provisions construed in the New York and Washington cases are, in substance, the same as our Oklahoma statutes. And that construed in the California case is identical in terms with Tit. 10 O.S. 1941 §51, which reads:

"A child, when adopted, may take the family name of the person adopting. After adoption, the two shall sustain towards each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation."

In the quoted cases the fact of the termination of the natural parents' legal rights by the adoption is established as a logical deduction in construing the statutes of those jurisdictions and would be persuasive authority here if the fact of such termination was dependent upon the logical effect of corresponding Oklahoma statutes. In this jurisdiction the legislative intent in that respect is not left to judicial inference because it is expressly declared in Tit. 10 O.S. 1941 §54, as follows:

"The natural parents of a child so adopted shall be deprived by the decree, of all legal rights as respects the child, and the child shall be freed from all obligations of maintenance and obedience as respects such parents."

In construing this statute (which was then sec. 4930, Comp. Laws Oklahoma 1909) we said in Allison v. Bryan, 26 Okla. 520, 109 P. 934, 30 L. R. A. (N.S.) 146, 138 Am. St. Rep. 988:

"By adoption, a child in law ceases to be the child of its natural parents; they cease to have any legal rights therein; and it no longer owes to them any duty. So declares the statute, section 4930, Comp. Laws Okla. 1909, which is as follows:

" 'The natural parents of a child so adopted shall be deprived by the decree of all legal rights as respects the child, and the child shall be de-

creed from all obligations of maintenance and obedience as respects such parents.' "

And, to like effect, we said in Mahan v. Moore, 198 Okla. 67, 175 P. 2d 345, 348:

"By 10 O. S. 1941 §54, the natural rights of parents are ended by adoption."

It follows from what has been said that since the adoption the petitioner has not been and is not now a parent of the minor children.

Although the petitioner has not been a parent of the minors since the adoption and is not now, it does not follow that he may not seek writ of habeas corpus for possession of the minor orphans herein merely because he is not named among those named in 12 O. S. 1941 §1354, as persons in whose favor the writ shall be granted. In Re Borcherding's Custody, 196 Okla. 19, 162 P. 2d 184, we held:

"When paternal grandparents proceed in district court by petition for writ of habeas corpus seeking to take custody of a minor child from his maternal grandparents, tendering the issue of the welfare and best interest of the child, the equitable jurisdiction of the court is not excluded because the statute, 12 O. S. 1941 §1354, does not specifically name a grandparent as a person in whose favor the writ of habeas corpus may issue."

In that case also we are committed to the rule that in a habeas corpus proceeding involving the custody of a minor, the welfare and best interest of the minor are the controlling factors in determining his custody.

See, also Heide v. Kiskaddon, 79 Okla. 6, 190 P. 859; Gaunt v. Gaunt, 160 Okla. 195, 16 P. 2d 579; Ex parte Parker, 195 Okla. 224, 156 P. 2d 584; Ex parte Miller, 201 Okla. 499, 207 P. 2d 290.

12 O. S. 1941 §1354 reads:

"Writ of habeas corpus shall be granted in favor of parents, guardians, masters, husbands and wives; and to enforce the rights and for the protection of infants and insane persons; and the proceedings shall, in all such cases, conform to the provisions of this article."

By the very wording of the statute two contingencies were outlined for its use: First, writ of habeas corpus shall be granted in favor of certain persons having designated relationships. Second, the statute authorizes the use of the writ of habeas corpus to enforce the rights and for the protection of infants and insane persons. The two parts are distinct and it would be necessary to ignore the sentence construction in order to construe the statute as if it read "Writ of habeas corpus shall be granted in favor of parents . . . to enforce the rights and for the protection of infants and insane persons."

In the circumstances of this case the petitioner has the right to seek the writ of habeas corpus for possession of the minors.

We have carefully examined the evidence. Judge Williams' findings of fact, numbers 6 and 7, to the effect that both petitioner and respondent and their respective wives "are fit and proper persons, have a suitable home and the likelihood of continuing income to provide suitably for the children" are sustained by the evidence.

We are of the opinion, however, that under all of the facts and circumstances shown, the best interest of Judy Diane Moulin Griffin and Jamie Carol Moulin Griffin, minors, will be served by awarding possession and custody of them to the petitioner, Martin Herbert Moulin, Jr.

It is so ordered.

DAVISON, C. J., ARNOLD, V. C. J., and WELCH, HALLEY, and JOHNSON, JJ., concur. O'NEAL, J., concurs in result.