**In the Matter of the Application of Billy Dale Young for a writ of habeas corpus.**

**Billy Dale YOUNG, Appellant,**

v.

**Cecil Ray REYNOLDS, Appellee.**

No. 51392.

Court of Appeals of Oklahoma, Division 1.

July 25, 1978.

Rehearing Denied Sept. 12, 1978.

Released for Publication by Order of Court of Appeals Oct. 5, 1978.

Steidley & Neal by W. G. "Gil" Steidley, Jr., McAlester, for appellant.

Gotcher, Gotcher & Gotcher by James E. Gotcher, McAlester, for appellee.

ROMANG, Judge:

The Appellant-Petitioner (Petitioner) sought a writ of habeas corpus in the District Court to acquire permanent or partial custody of a minor child from the surviving party and presumptive father under 10 O.S.1973 Supp., § 3. The application for the writ raised parentage but was ruled untimely by the District Court, a decision not challenged on appeal. The District Court denied the application in a Memorandum Decision which held that the Petitioner

having no legal or blood relationship to the child and not being a person authorized to be granted the writ under 12 O.S.1971, § 1354, had no standing to seek a writ to test Respondent's custody. Petitioner has appealed.

Petitioner's appeal properly focuses on two Supreme Court cases: *In re Borcherding's Custody*, 196 Okl. 19, 162 P.2d 184 (1945) and *Ex parte Moulin*, 203 Okl. 99, 217 P.2d 1029 (1950). In *In re Borcherding's Custody (Borcherding)* the Supreme Court had before it an appeal from the trial court's grant of the writ to the child's paternal grandparents (the father being deceased) and against the maternal grandparents who had kept the child for the mother. In a 5–3 decision the majority reversed the trial court on the merits and remanded the case for an order denying the writ. After addressing the merits the majority addressed the issue under 12 O.S.1971, § 1354 as one going to the jurisdiction of the trial court. After citation of numerous authorities on the general question and not dealing with our specific statutory language, the majority stated:

> "In so far as it is necessary to determine that point we here assume and conclude that the district court had jurisdiction and that we have jurisdiction to consider the matter on its merits." *Borcherding* 162 P.2d at 186–187.

In the Court's syllabus it was further stated that

> "When paternal grandparents proceed in district court by petition for writ of habeas corpus seeking to take custody of a minor child from his maternal grandparents, tendering the issue of the welfare and best interest of the child, the *equitable jurisdiction* of the court is not excluded because the statute . . . does not specifically name a grandparent as a person in whose favor the writ of habeas corpus may issue." (Emphasis added.) *Borcherding* 162 P.2d at 184.

The emphasized language does not appear in the opinion. It is on this point that the dissent was most critical citing an array of contrary authority interpreting similar statutes.

In *Ex parte Moulin (Moulin), supra*, an original action in the Supreme Court, a unanimous Court (O'Neal, J., concurring in result) relied on *Borcherding*, citing the syllabus quoted above, to permit a natural father, who had consented to the child's adoption by the wife's second husband to obtain the writ against a maternal uncle, both mother and adoptive father being deceased. In doing so the Court recognized that the adoption had terminated all legal rights and duties between the natural father and the child and treated the natural father as a legal stranger. The Court construed § 1354 as follows:

> "By the very wording of the statute two contingencies were outlined for its use: First, writ of habeas corpus shall be granted in favor of certain persons having designated relationships. Second, the statute authorizes the use of the writ of habeas corpus to enforce the rights and for the protection of infants and insane persons." *Moulin* 217 P.2d at 1034.

The District Court in a written decision ably considered the relevant problems but essentially denied the Petitioner standing because of the presumption favoring parents, i. e., the Respondent, and the lack of any allegation or proof supporting the unfitness of Respondent. As we read the District Court's decision he actually reached the merits and then denied standing rather than determine whether there was standing for Petitioner to test custody. On appeal the able briefs of the parties raise the standing question primarily although one brief does argue the merits of custody.

■ In our reading of *Borcherding* and *Moulin* it is clear that persons other than those mentioned in § 1354 have been permitted to seek the writ to test custody of minors. *Borcherding*, in the syllabus quoted above, seems to suggest that this authority rests in the courts' equitable jurisdiction while *Moulin* found authority in the second clause of § 1354. Respondent raises the specter of any person being authorized to seek a writ of habeas corpus to test the

custody of any parent or other person *in loco parentis*. But the *Borcherding-Moulin* rule does not suggest as much. In both cases blood relatives were permitted to seek a change in the custody of a child. No total strangers were granted standing. While it is evident that the persons named in § 1354 are not all the persons authorized to seek the writ, the category of those with standing is still limited to persons with a clear and definite relationship to the child. The parameters of the rule are not as precise as those in § 1354 but it is clear to us that the District Court was correct in denying standing to Petitioner. Once it was clear that parentage could not be raised under 10 O.S. 1973 Supp., § 3, it became conclusively presumed that Petitioner had no relationship similar to those in *Borcherding* and *Moulin*. That is enough on these facts to sustain the trial court. Without a legal or substantial blood relationship we find no authority for permitting this Petitioner to test Respondent's custody of the child. The decision is affirmed.

AFFIRMED.

BOX, P. J., and REYNOLDS, J., concur.